755 F.2d 26
 1985 A.M.C. 1643
 CHINA UNION LINES, LIMITED and International Union Maritime
Insurance Company, Limited,
Plaintiffs-Appellees-Cross-Appellants,
v.
AMERICAN MARINE UNDERWRITERS, INC., Calvert Fire Insurance
Co., Canadian Marine Underwriters Limited, and CNA
Assurance Company, Inc., Defendants,
CNA Assurance Company, Inc., Defendant-Appellant.
AMERICAN MARINE UNDERWRITERS, INC., and Calvert Fire
Insurance Co., Defendants-Third Party Plaintiffs,
Calvert Fire Insurance Co., Defendant-Third Party Plaintiff-Appellant,
v.
I.R. POSGATE AND OTHER UNDERWRITERS AT LLOYD'S SUBSCRIBING
TO REINSURANCE CONTRACT "GHL NO. 1039-61", Third
Party Defendants.
CHINA UNION LINES, LIMITED and International Union Maritime
Insurance Company, Limited,
Plaintiffs-Appellees-Cross-Appellants,
v.
ALEXANDER & ALEXANDER, INCORPORATED and C.E. Heath & Co.
(Marine) Ltd., Defendants-Cross-Appellees.
 Cal. Nos. 167, 168, 239, Dockets 84-7394, 84-7396, 84-7398.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 15, 1984.
Decided Feb. 7, 1985.
 
 John M. Townsend, New York City (Hughes Hubbard & Reed and Bruce R. Kelly, New York City, of counsel), for plaintiffs-appellees-cross-appellants China Union Lines, Ltd. and Internl. Union Maritime Ins. Co., Ltd.
 John J. Palmeri, New York City (Palmeri & Gaven, New York City, of counsel), for defendant-cross-appellee Alexander & Alexander, Inc.
 Joseph F. DeMay, Jr., New York City (Cichanowicz, Callan, Carcich & Keane, and Victor S. Cichanowicz, New York City, of counsel), for defendant-cross-appellee C.E. Heath & Co. (Marine) Ltd.
 Raymond S. Jackson, Jr., New York City (Thacher, Proffitt & Wood, Sheldon A. Vogel, Joan H. Hillenbrand, and Paul V. Nunes, New York City, of counsel), for defendant-third party plaintiff-appellant Calvert Fire Ins. Co.
 Geoffrey W. Gill, New York City (Walker & Corsa, LeRoy S. Corsa, and Kathleen V. McQuilling, New York City, of counsel), for defendant-appellant CNA Assur. Co., Inc.
 Before OAKES and VAN GRAAFEILAND, Circuit Judges, and TENNEY, District Judge.*
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 Calvert Fire Insurance Co. (Calvert) and CNA Assurance Company, Inc. (CNA) appeal from a judgment of the United States District Court for the Southern District of New York (Broderick, J.) holding them liable under contracts of marine insurance in the total amount of $2,892,502 because of the loss at sea on February 12, 1975 of the ship UNION EAST. China Union Lines, Limited (China Union), the Taiwanese shipowner, and International Union Maritime Insurance Company, Limited (International), China Union's wholly-owned subsidiary, cross-appeal from that portion of the judgment dismissing the complaint as to the other defendants, intending thereby only to preserve their rights in the event of reversal on the primary appeal.
 
 
 2
 At issue herein is a somewhat complex plan of insurance, designed by C.E. Heath & Co. (Marine) Ltd. (Heath) to reduce the cost to China Union of insuring the hulls and machinery of its fleet of ships. The insurance was to take effect on January 14, 1975. Because Taiwan requires ships bearing its flag to be insured in the first instance by Taiwanese companies, Heath's plan called for China Union to place part of the risk of its fleet with International, its captive company, and the remainder with various other Taiwanese insurance companies. International's policy would insure China Union for up to $150,000 per claim, subject to a $10,000 deductible on all claims except total loss. The other Taiwanese policies would provide total coverage of $9 million, subject to a $150,000 deductible per claim including total loss. The companies issuing these policies would reinsure 80% of their coverage with International, which, in turn, would reinsure its entire insurance package at various places around the world. As a result of this arrangement, Heath ended up handling the placement of a substantial portion of the package.
 
 
 3
 A money-saving component of Heath's plan was the placement of 55% of its share on the less expensive, non-London, "overseas" market. Heath offered overseas insurers an optional premium that would be either the insurer's proportionate share of a total premium of $675,000 less 20% brokers' commissions or its proportionate share of $600,000 less 10% brokers' commissions.
 
 
 4
 The instant case involves only the 15% share Heath offered to Alexander & Alexander, Incorporated (Alexander), a United States marine insurance broker, on January 9, 1975. Heath first telephoned its offer to Alexander, then followed with a telex setting forth the terms and describing the ships to be covered. Upon receiving Heath's offer, Alexander's agent, Thomas Degnan, telephoned Alex Carter, vice-president of American Marine Underwriters, Inc. (American Marine), which represented a number of United States insurance companies including Calvert. Degnan told Carter the terms of Heath's offer, sent Carter a copy of Heath's telex, and, responding to Carter's inquiry, secured information from Heath as to the renewal date. Degnan then assigned the task of placement to a fellow employee, Charles Nutter.
 
 
 5
 Nutter called Carter to give him the renewal date, and the two men went over the terms of Heath's original telex, which, they decided, required some clarification. After agreeing to secure the clarification, Nutter requested that American Marine lead Alexander's participation, as it had done with past offerings. On behalf of Calvert, Carter agreed to accept two-thirds of the 15% placement on the $600,000 premium basis.
 
 
 6
 Nutter then called Peter Smith, vice-president of Canadian Marine Underwriters, Ltd. (Canadian Marine), seeking to place the remaining one-third of the China Union offering. Smith agreed that Canadian Marine would take the 5% on the $600,000 premium basis, and thereafter placed the 5% with CNA.
 
 
 7
 Seeking to place more of the China Union risk, Nutter also contacted an agent of New York Marine Managers, who inquired, among other things, whether Alexander's offering was on the same terms and conditions as the London market and, if so, who were the lead London underwriters. Nutter promptly telexed Heath seeking this and other information. On the next day, January 14, Nutter received a telex from Heath, which read in part as follows:
 
 
 8
 LONDON PARTICIPATION SAME BASIS BUT DIFFERENT PREMIUM AS ADVISED PREVIOUSLY PER TELEPHONE RISK LEAD BY HOME INSURANCE COMPANY AND H.G. CHESTER.
 
 
 9
 During a conversation with Carter regarding other matters on January 17, Nutter read him Heath's January 14 telex. Shortly thereafter, Alexander sent American Marine and Canadian Marine proposed binders, which, in due course, were signed and returned.
 
 
 10
 On February 19, American Marine and Canadian Marine were informed that the UNION EAST had sunk. Heath notified Alexander on February 28 that it would be filing a claim for total loss of the ship and asked whether American Marine and Canadian Marine would agree to deduct the premiums owed them from their liability on the loss. Because appellants have never conceded liability, no agreement was reached as to the offsetting of premiums.
 
 
 11
 Coincidently, Alexander also received on February 28 Heath's slip describing the insurance to be furnished by American Marine and Canadian Marine. In contrast to the binder which listed China Union as assured, the slip described the coverage as "Reinsurance of International Union Marine Insurance Co." Subsequently, the American underwriters also learned that Heath had placed other portions of the risk on the London market on a premium basis of $885,600, which, of course, was more favorable than the terms offered the American underwriters.
 
 
 12
 Recognizing that there may have been "some confusion" concerning the terms of the risk, Heath invited Alexander's clients to amend their agreements to conform to the London terms. However, both American Marine and Canadian Marine declined Heath's offer, contending that their agreed coverage was void from its inception because they had not been informed of the disparity in the terms offered London and American underwriters. They rejected claims for payment of the loss, and this litigation followed.
 
 
 13
 The panel is in accord with respect to the district court's holding on liability. The amount of the award has the approval of only two panel members.
 
 THE LIABILITY
 
 14
 Calvert's principal contention on appeal is that it was misinformed concerning the payment of higher London premiums. The district court found, however, that there were no representations or misrepresentations concerning London premiums prior to the time appellants bound themselves on the risk. This finding has support in the record. Moreover, Heath's telex of January 14, 1975 stated specifically that London participation was on the same basis but at a different premium.
 
 
 15
 There is no merit in Calvert's argument that Heath should have disclosed the difference in premiums at the outset, because, Calvert asserts, it was a factor that materially affected the risk. See Btesh v. Royal Ins. Co., Ltd., 49 F.2d 720 (2d Cir.1931); 9 Couch on Insurance 2d Sec. 38:76 (1962). Appellant's own witness testified that it is common for premiums on the same risk to vary as between insurers, and silence concerning well-established practices and matters of general knowledge does not affect the validity of a marine insurance contract, Anne Quinn Corp. v. American Manufacturers Mutual Ins. Co., 369 F.Supp. 1312, 1315 (S.D.N.Y.1973), aff'd mem., 505 F.2d 727 (2d Cir.1974). Moreover, there is little if any relationship between such variances in premium and the gravity of the risk. An insurer weighs its exposure against the premium which it, itself, receives.
 
 
 16
 Calvert's argument that it was not bound by its apparent contractual undertaking because there was no meeting of the minds concerning London premiums, is likewise without merit. The objective, not the subjective, intent of the parties governs their contractual obligations, Pan American World Airways, Inc. v. Aetna Casualty & Surety Co., 505 F.2d 989, 1003 (2d Cir.1974); and, even after Calvert was informed by Nutter of the difference in premiums, it voiced no complaint.
 
 
 17
 CNA's principal contention is that neither China Union nor International had the insurable interest needed for recovery. Although CNA did not assert this as a ground for its disclaimer, it argued it in the court below. CNA asserts in its appellate brief that, since China Union had insurance covering 100% of the value of the vessel, "[t]his insurance stood in place of China Union's insurable interest." This, of course, is not so. Duplication of coverage is not an unknown occurrence in the field of marine insurance. See 16 Couch, supra, Sec. 62:217; see also 3 id. at Sec. 24:91. Not surprisingly, CNA later modifies its prior blanket statement by asserting that the insurance issued by the Taiwan carriers "superseded China Union's insurable interest, which then may be said to have become 'directional' ", i.e., existing only with regard to China Union's claims against its direct insurers. Here, we suggest, CNA is confusing insurable interest with privity of contract. As a general rule, reinsurance contracts are contracts of indemnity, which give the original assured no right of action against the reinsurer. However, the reinsurer may agree to be directly liable to the original assured. Bruckner-Mitchell, Inc. v. Sun Indemnity Co., 82 F.2d 434, 444 (D.C.Cir.), cert. denied, 298 U.S. 677, 56 S.Ct. 941, 80 L.Ed. 1398 (1936); 19 Couch, supra, Sec. 80:70. If, instead of arguing lack of insurable interest, CNA had discussed the terms of the proposed contracts of reinsurance, the district court might have done the same. The court should not be faulted for discussing and rejecting CNA's insurable interest argument, an argument that was without merit.
 
 
 18
 In any event, International's liability as insurer and reinsurer gave it an insurable interest, which it might protect by reinsuring. 3 Couch, supra, Sec. 24:58. The district court found that, as of January 14, 1975, one month prior to the loss, "the structure of insurance and reinsurance developed by Heath was in place", and "the insurance and reinsurance [were] all effective". This finding was not clearly erroneous. International, China Union's wholly-owned subsidiary, thus was a direct beneficiary of the insurance being placed by Heath, and it made little difference, as a practical matter, whether China Union was entitled to recover in its own name.
 
 
 19
 Conceivably, CNA could have been prejudiced by the fact that it was reinsuring rather than furnishing direct coverage. For example, the slip that Alexander received from Heath on February 28, 1975 contained an "ex gratia" clause, which would bind CNA to any settlements made between China Union and its wholly-owned subsidiary, International, whether made with or without CNA's consent or approval. However, CNA does not contend that it is being asked to pay for a false or inflated loss. Moreover, as was true with CNA's claim concerning lack of insurable interest, CNA did not assert the fact of reinsurance as a basis for disclaimer. Indeed, CNA's fellow defendant, Calvert, has never urged this as a reason for denying liability. The district court properly rejected CNA's argument.
 
 THE AWARD
 
 20
 Calvert and CNA were held liable in the principal amounts of $900,000 and $450,000 respectively. They also were held liable for pre-judgment interest in the respective amounts of $1,028,334 and $514,167, the interest in each case being substantially in excess of the principal. This was due to the fact that judgment was not entered until March 30, 1984, over nine years after the principal became due, and interest was fixed in accordance with the rate on three-month treasury bills, compounded annually. Recognizing that the allowance of pre-judgment interest generally is favored in admiralty cases, Mitsui & Co., Ltd. v. American Export Lines, Inc., 636 F.2d 807, 823 (2d Cir.1981), and that the district court exercises a broad discretion in making such awards, Independent Bulk Transport, Inc. v. Vessel "Morania Abaco", 676 F.2d 23 (2d Cir.1982), Judge Oakes and Judge Tenney find no abuse of that discretion in this case. The writer disagrees.
 
 
 21
 The docket sheet shows that the four-day, non-jury trial ended on July 24, 1980. The district court's decision was dated March 9, 1984. Compound interest was awarded during the four years that elapsed between trial and judgment as follows: 1980--11.506%; 1981--14.029%; 1982--10.686%; 1983--8.63%; 1984--8.98%. Moreover, interest was compounded even though it appears that appellees did not lose the use of the principal sums. The record discloses that appellees suspended or deferred premium payments to Heath that were in excess of the amounts owed by appellants. See Norte & Co. v. Huffines, 416 F.2d 1189, 1192 (2d Cir.1969), cert. denied, 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970). The writer believes that "[a] system so devoted to equitable principles as the admiralty", see Schilling v. A/S D/S Dannebrog, 320 F.2d 628, 633 (2d Cir.1963), should be able to provide a remedy that more fairly and equitably adjusts the parties' differences. Simple, rather than compound, interest would reduce the total award by at least three hundred thousand dollars. In view of the unusual and unwarranted delay that occurred in this case, the writer believes that the award of compound interest was an inequitable abuse of discretion. The writer also is motivated to this view by the fact that appellants have not received one cent in premiums, and appellees are about to collect almost $3 million for which they have paid nothing.[1]
 
 
 22
 There is no merit in any of appellants' remaining arguments. The judgment of the district court is affirmed.
 
 
 
 * U.S. District Judge of the Southern District of New York, sitting by designation.
 
 
 [1]
 The record is silent as to whether China Union was forced to pay premiums to an alternative insurer in order to close the 15% gap in fleet coverage created by appellants' refusal to pay, or as to the cost of such coverage