GORENSTEIN ENTERPRISES, INC., Sam Gorenstein, and David Gorenstein, Plaintiffs-Appellants,

v.

QUALITY CARE-USA, INC. and David A. Scheinman, Defendants-Appellees.

Nos. 84-1731, 88-1031, 88-1731 and 88-2068.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1988.

Decided May 2, 1989.

Merle L. Royce, Chicago, Ill., for plaintiffs-appellants.

David J. Brody, Widett, Slater & Goldman, Boston, Mass., for defendants-appellees.

Before POSNER, COFFEY and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

This protracted litigation over a franchise resulted in a resounding defeat for the franchisee and its principals—the Gorenstein brothers. Substantial and experienced businessmen who own and operate several nursing homes in the Chicago area, they had obtained a franchise in 1978 from Quality Care–USA to provide home health care services in the Chicago area under Quality Care's registered trademark. Home health care services involve the provision of nursing and other medical care in the home rather than in an institution. Licensed home health care providers can provide some services that unlicensed ones cannot; the parties disagree over whether Quality Care undertook as part of its deal with the Gorensteins to obtain a license for the franchised operation.

Shortly after obtaining the franchise from Quality Care the Gorensteins defaulted on their royalty obligations, and in 1980 Quality Care terminated the Gorensteins' franchise and demanded that they cease using the Quality Care trademark forthwith. Ignoring the demand, the Gorensteins instead sued Quality Care in an Illinois state court, seeking rescission of the franchise agreement. Quality Care removed the suit to federal district court on grounds of diversity, and there also filed its own suit against the Gorensteins, basing jurisdiction on both diversity and the federal trademark statute and seeking both to collect the unpaid royalties under the agreement and to enjoin, as a violation of the trademark statute and of the franchise agreement as well, the Gorensteins' continued use of the Quality Care trademark. After the district judge granted Quality Care's motion for a preliminary injunction, the Gorensteins dismissed the removed suit and refiled it as a counterclaim to Quality

Care's suit. Contending that Quality Care had abandoned the trademark by acquiescing in the Gorensteins' continued use of it after the termination of the franchise, the counterclaim sought rescission of the franchise on the ground that Quality Care had induced the Gorensteins to accept it by false representations, in violation of the Illinois Franchise Disclosure Act, Ill.Rev. Stat. ch. 121½, ¶¶ 701 (now 1712) *et seq.*

In 1982 the district judge granted partial summary judgment for Quality Care, ruling that the Gorensteins were indeed guilty of infringing Quality Care's trademark. Six months later the Gorensteins moved to vacate the grant of partial summary judgment on the basis of newly discovered evidence and a new legal theory, and to amend their counterclaim. The newly discovered evidence purported to show that Quality Care had made false representations going far beyond those charged in the counterclaim. The new legal theory was that the Gorensteins' effort to rescind the franchise entitled them to continue using the Quality Care trademark until the district judge decided whether to grant rescission. The judge denied the Gorensteins' motion, whereupon (in 1983) they filed the proposed amended counterclaim as a fresh lawsuit in state court. Quality Care removed this suit to the federal district court and then moved to dismiss it on the ground that it was a compulsory counterclaim to Quality Care's suit. See Fed.R. Civ.P. 13(a). The district judge granted the motion.

Quality Care's case then went to the jury, which found in its favor and awarded damages. The judge trebled the jury's award of damages for trademark infringement, and also awarded Quality Care attorney's fees on the entire judgment, plus prejudgment interest, at 9 percent per annum, on the award of trademark damages (untrebled), making a grand total that with postjudgment interest is now approaching $900,000.

The Gorensteins appeal, challenging the refusal to let them amend their counterclaim, the exclusion of the newly discovered evidence of misrepresentation, other rulings on the evidence, the instructions to the jury, the dismissal of the suit they filed in 1983 which duplicated the amended counterclaim that they were forbidden to file, the trebling of the jury's award of damages for trademark infringement, the award of attorney's fees, the award of prejudgment interest, and the 9 percent prejudgment interest rate. Quality Care, invoking Rule 38 of the Federal Rules of Appellate Procedure, asks us to award it the attorney's fees that it has incurred in defending against the appeal.

■ We begin with the question whether the Gorensteins should have been permitted to change their defense and counteroffensive three years into the case. The proposed change was dramatic. Originally the Gorensteins had argued that Quality Care had abandoned its trademark and that the franchise was voidable because Quality Care had made three specific misrepresentations, mainly about licensure. Pretrial discovery revealed that these claims had no merit. Meanwhile the Gorensteins' original counsel had been disqualified, on Quality Care's motion, because he had both negotiated the franchise and later, when the Gorensteins could not make a go of the franchise, had advised them to keep on using Quality Care's trademark after they lost the franchise; he was therefore potentially a key witness. The Gorensteins also had had a parting of the ways with a second law firm and were now on their third set of lawyers. It was these lawyers—their present counsel—who decided in 1983 to switch the focus of the suit. They wanted to reopen discovery for the purpose of gathering evidence that Quality Care had misrepresented the profitability of its franchises in the negotiations with the Gorensteins, and they wanted to resist the trademark infringement claim by arguing that the Gorensteins were entitled to continue using Quality Care's mark until their claim for rescission of the franchise was resolved.

The Gorensteins argue that lawsuits ought to be decided on the merits and that the district judge unreasonably penalized them for the mistakes of their first two

sets of lawyers. In a perfect world, lawsuits *would* be decided on the merits rather than on procedural grounds, but in the imperfect world that we happen to live in many lawsuits are cut off without full—often without any—consideration of the merits: the case is settled, or a party defaults, or the complaint is dismissed or a defense precluded as a sanction, and so forth. The Gorensteins' plaint falls particularly flat because the "merits" they wish to urge are technical and legalistic, having nothing to do with equity or substantive justice, and were in fact adequately ventilated notwithstanding the judge's procedural rulings.

Regarding Quality Care's claim of trademark infringement, a claim based entirely on the Gorensteins' refusal to stop using Quality Care's trademark when the franchise was terminated, the merits were *fully* ventilated. The Gorensteins had argued abandonment and acquiescence, on which see *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 933–34 (7th Cir. 1984), and had lost, and they do not press the argument in this court. Then they argued that they had a right to use the trademark for as long as they were seeking to rescind the franchise. The district judge was not pleased that the argument was first made after he ruled that the trademark had been infringed, but he considered the argument anyway—and rejected it on the merits. He was right to reject it. The argument was frivolous, and, not surprisingly, offered without supporting authority. Once a franchise has been terminated, the franchisee cannot be allowed to keep on using the trademark. The owner of a trademark has a duty to ensure the consistency of the trademarked good or service. If he does not fulfill this duty, he forfeits the trademark. See, e.g., *Oberlin v. Marlin American Corp.*, 596 F.2d 1322, 1327 (7th Cir.1979). The purpose of a trademark, after all, is to identify a good or service to the consumer, and identity implies consistency and a correlative duty to make sure that the good or service really is of consistent quality, i.e., really is the same good or service. If the owner of the trademark has broken off business relations with a licensee he cannot ensure the continued quality of the (ex-)licensee's operation, whose continued use of the trademark is therefore a violation of trademark law. See, e.g., *Burger–King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir.1983); *El Greco Leather Products Co. v. Shoe World, Inc.*, 806 F.2d 392, 396 (2d Cir. 1986); *Franchised Stores of New York, Inc. v. Winter*, 394 F.2d 664, 668 (2d Cir. 1968).

The argument for entitling the ex-licensee to retain the trademark is particularly feeble where, as in this case, he himself is seeking to break off business relations with the licensor. The Gorensteins were seeking to rescind the franchise. They didn't want to continue providing Quality Care home health services, yet they wanted to keep on using the trademark that identified them as a provider of those services. There is considerable evidence that the Gorensteins were holding the trademark hostage as a bargaining tactic to pressure Quality Care into renegotiating the franchise or settling the suit. Whether or not this was their motive, the Gorensteins cannot repudiate the franchise yet retain the major consideration they received under it—the right to use Quality Care's trademark. *Costandi v. AAMCO Automatic Transmissions, Inc.*, 456 F.2d 941 (9th Cir.1972) (per curiam).

No more impressive is the Gorensteins' further argument that they kept on using the trademark because they were duty-bound to return the franchise in the condition in which they had obtained it, trademark and all, *after* their claim for rescission was decided. It was Quality Care's trademark; it was for Quality Care to decide whether to let the Gorensteins continue to use it after the franchise was terminated.

So weak are the Gorensteins' arguments regarding their infringement of Quality Care's trademark, and so deliberate the infringement, that it might have been an abuse of discretion for the district judge *not* to have awarded Quality Care treble damages, attorney's fees, and prejudgment interest. Section 35(a) of the Lanham Act,

15 U.S.C. § 1117(a), provides that, "subject to the principles of equity," the owner of the infringed trademark shall be entitled to his damages; and "in assessing damages, the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." The same section provides that "the court, in exceptional cases, may award reasonable attorney fees to the prevailing party." These provisions are properly invoked when, as in this case, the infringement is deliberate. See, e.g., *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 746 (7th Cir.1985); *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 828 (7th Cir.1984) (dictum).

■ While the statute makes no reference to prejudgment interest, the Gorensteins do not question that federal common law authorizes the award of such interest in appropriate cases to victims of violations of federal law. See, e.g., *West Virginia v. United States*, 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987); *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983); *Rodgers v. United States*, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3 (1947); *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1297–99 (7th Cir.1987); *Central Rivers Towing, Inc. v. City of Beardstown*, 750 F.2d 565, 574 (7th Cir.1984); *Hillier v. Southern Towing Co.*, 740 F.2d 583 (7th Cir.1984); *Myron v. Chicoine*, 678 F.2d 727, 733–34 (7th Cir.1982); *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988 (6th Cir. 1982); *L.P. Larson, Jr., Co. v. William Wrigley, Jr., Co.*, 20 F.2d 830, 836 (7th Cir.1927)—the last a trademark case. The areas in which such interest is allowed, illustrated by the cases just cited, are diverse. The time has come, we think, to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay.

■ The award of prejudgment interest is particularly appropriate in a case such as this where the violation was intentional, and indeed outrageous. For although the Gorensteins argue that in continuing to use Quality Care's trademark they were just following their first lawyer's advice, and hence acting in good faith, the judge found, not clearly erroneously, that the lawyer gave the Gorensteins this advice only because they had given him a false statement of the facts. The advice could not rise above its tainted source. You do not show good faith that will defeat a finding of willful violation of law by acting on legal advice based on your own misrepresentations.

■ There is no federal statutory interest rate on prejudgment interest. But as the 9 percent figure used by the district judge was well below the average interest rate for "securities" comparable in riskiness to Quality Care's cause of action for trademark infringement against the Gorensteins, he can hardly be criticized for setting too high a rate. Surely the rate was too low; there were times while this suit was pending when the prime rate exceeded 20 percent. For the future, we suggest that district judges use the prime rate for fixing prejudgment interest where there is no statutory interest rate. That is a readily ascertainable figure which provides a reasonable although rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default. The defendant who has violated the plaintiff's rights is in effect a debtor of the plaintiff until the judgment is entered and paid or otherwise collected. At any time before actual payment or collection of the judgment the defendant may default and the plaintiff come up empty-handed. The plaintiff is an unsecured, uninsured creditor, and the risk of default must be considered in deciding what a compensatory rate of interest would be.

A federal statute, 28 U.S.C. § 1961, fixes the *post* judgment interest rate for federal cases (including diversity cases, see *Travelers Ins. Co. v. Transport Ins. Co.*, 846 F.2d 1048, 1053–54 (7th Cir.1988)) as the rate on 52–week Treasury bills at the last auction

of those bills before the judgment was entered. This rate is too low, because there is no default risk with Treasury bills. Of course the courts are bound by that rate so far as postjudgment interest is concerned. But prejudgment interest is governed by federal common law, and the courts are free to adopt a more discriminating approach. See, e.g., *Central Rivers Towing, Inc. v. City of Beardstown, supra,* 750 F.2d at 574. We have chosen the prime rate for convenience; a more precise estimate would be the interest rate paid by the defendant for unsecured loans. We do not want to straitjacket the district judges but we do want to caution them against the danger of setting prejudgment interest rates too low by neglecting the risk, often nontrivial, of default.

 We also reject the Gorensteins' argument that the judge should not have awarded *compound* prejudgment interest. Their dilatory tactics denied Quality Care the use of its money, including the opportunity to obtain interest on interest. The only case the Gorensteins cite for the proposition that it is improper under federal common law to compound prejudgment interest holds no such thing. See *Speed v. Transamerica Corp.,* 235 F.2d 369, 374 (3d Cir.1956). The cases they do not cite leave the matter to the discretion of the district court. See, e.g., *China Union Lines, Ltd. v. American Marine Underwriters, Inc.,* 755 F.2d 26, 30–31 (2d Cir.1985); *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 556–57 (Fed.Cir.1984); *Transorient Navigators Co., S.A. v. M/S Southwind,* 788 F.2d 288, 293 (5th Cir.1986). In *Dynamics Corp. of America v. United States,* 766 F.2d 518 (Fed.Cir.1985), the district court's *refusal* to compound prejudgment interest was reversed as an abuse of discretion.

 The Gorensteins point out that the federal trademark statute allows the award of attorney's fees only for trademark infringement. Quality Care was also seeking unpaid royalties, and that was a claim not of infringement but for payment for the use of its trademark pursuant to the license before the license was terminated. The judge awarded Quality Care attorney's fees for its entire case (in contrast, he awarded prejudgment interest only on the untrebled damages awarded for the trademark violation), and based the award entirely on the trademark statute, rather than partially as he should have done. But this was a harmless error. The district judge expressly found that the Gorensteins had defended against this litigation in bad faith. They had committed perjury in answering interrogatories, their defense to the trademark infringement claim (which we have just discussed) was ridiculous, their attempt to circumvent the district judge's ruling on the motion to amend the counterclaim by filing a fresh lawsuit patently barred by res judicata was a shameful abuse of process, and so on. These findings would have compelled the district judge to impose *some* sanction under Fed. R.Civ.P. 11, and we cannot imagine what sanction would have been more appropriate than the one he imposed, albeit citing the wrong source for his power to do so.

The Gorensteins' motion to amend the counterclaim to add new charges of misrepresentation was denied as untimely. The district judge did not abuse his discretion in so ruling. Three years into the suit was too late to add a completely new set of alleged misrepresentations. And the timing was suspicious. The judge had just ruled against the Gorensteins on the claim of trademark infringement. Discovery had failed to substantiate the claims of infringement that they had first filed. It was now five years since the franchise negotiations—time enough, one might have thought, to discover what representations made during the negotiations had been false. To pin down the charge that Quality Care had misrepresented the profitability of its franchises would have required obtaining financial records from dozens of those franchisees—perhaps from all 162 of them. The trial would have been delayed for years.

If Judge Kocoras, a patient and tolerant judge, had thought that Quality Care really had been guilty of serious misrepresentations, he doubtless would have allowed the

Gorensteins to amend their counterclaim, notwithstanding the burden on Quality Care of the additional discovery and the burden on the court of allowing this lawsuit to wax even greater. But it was reasonably plain to him as it is to us that the prospects that the amendment would be shown to have any merit were dim. During the franchise negotiations, Quality Care had given the Gorensteins the actual operating results of the two franchised services that they were taking over, and had explicitly and repeatedly disclaimed any assurances regarding future profits. The Gorensteins knew what they were getting into. They were experienced and knowledgeable businessmen. The trial produced abundant evidence that they failed to make money on the franchised operation because they refused to take Quality Care's advice.

 The only other issue that merits discussion is Quality Care's claim for attorney's fees on appeal. Rule 38 empowers us to impose sanctions for the filing of a frivolous appeal. Ordinarily the frivolousness of an appeal is determined by considering the issues presented in the appeal. If, however, the underlying suit or defense is frivolous, a sanction can be imposed by analogy to the award of fees for defending in the court of appeals a district court fee award under 42 U.S.C. § 1988. If a plaintiff wins a suit and is entitled by statute to a reasonable attorney's fee, the entitlement extends to the fee he reasonably incurs in defending the award of that fee. See, e.g., *Bond v. Stanton*, 630 F.2d 1231, 1234 (7th Cir.1980). Otherwise the fee will undercompensate. It is the same here. The Gorensteins sued, defended, and countersued in bad faith. The trademark law and Rule 11 of the Federal Rules of Civil Procedure entitled Quality Care to be made whole for the expenses it incurred in resisting the Gorensteins' frivolous effort to contest its claim for back royalties and trademark infringement. This make-whole policy extends to the fees Quality Care has had to incur on this appeal to protect its victory in the district court. Stated differently, the appeal of a litigant whose position in the district court was correctly adjudged frivolous is frivolous per se. See *Tamari*

*v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 475 (7th Cir.1984); *Hays v. Sony Corp. of America*, 847 F.2d 412, 419 (7th Cir.1988); *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1179–80 (D.C.Cir.1985).

 Quality Care could therefore move the district judge for an award under Rule 11 of the fees it incurred in defending the appeal(s) in this court, without having to show that all or even any of the arguments made by the Gorensteins on appeal were frivolous (most were, but not all). Can Quality Care instead ask us to award those fees under Rule 38? We do not see why not. It will save everyone time and money to wind up the proceedings now, in this court, without a remand to the district court. After all, we have a clearer idea of the situation on appeal than the district court. Rule 38 is designed to penalize frivolous appeals. An appeal by a party whose claim or defense was frivolous is, in the absence of special circumstances nowhere disclosed in this record, frivolous within the meaning of Rule 38.

There is a time to fight, and a time to quit. The Gorensteins and their assorted counsel should have realized years ago that they had no right to continue using Quality Care's trademark and that they had no defense to Quality Care's claim for unpaid royalties and related sums due under the franchise agreement. As that claim was for less than $170,000, it is plain that most of the judgment that the Gorensteins must pay is due to their own obduracy.

Quality Care is directed to submit within 15 days a statement of the attorney's fees reasonably incurred in defending against these consolidated appeals. The judgment is

AFFIRMED.

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court and am also pleased to join the essential reasoning of the majority's thoughtful and comprehensive opinion. I write separately only to emphasize that I do not understand the majority's rather expansive treatment of the prejudgment interest issue as constitut-

ing a departure from the settled law of the circuit that "the decision to award prejudgment interest rests in the sound discretion of the adjudicatory tribunal and involves a balancing of the equities between the parties under the circumstances of the particular case." *Myron v. Chicoine,* 678 F.2d 727, 734 (7th Cir.1982). In exercising that discretion, the district court must give its prime attention to the intent of Congress in enacting the substantive statutory provision at issue. Therefore, prejudgment interest usually will be "necessary to carry out the federal policies of compensation and deterrence." *Williamson v. Handy Button Mach. Co.,* 817 F.2d 1290, 1297 (7th Cir.1987). On the other hand, " '[o]rdinary' does not imply inevitable," *id.,* and, as the Supreme Court pointed out in *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 656–57, 103 S.Ct. 2058, 2062–63, 76 L.Ed.2d 211 (1983), prejudgment interest might be inappropriate at some times. *See also Osterneck v. Ernst & Whinney,* —— U.S. ——, 109 S.Ct. 987, 991 & n. 2, 103 L.Ed.2d 146 (1989) (noting that, in a federal securities action, a district court will consider a number of factors in determining the appropriateness of prejudgment interest). As our court pointed out in *Williamson,* "[s]ubstantial, unexplained delay in filing suit might be ... a reason [making prejudgment interest inappropriate], because delay shifts the investment risk to the defendant, allowing the plaintiff to recover interest without bearing the corresponding risk." *Williamson,* 817 F.2d at 1298. A jury verdict that already compensates the plaintiff for the lost time value of money would also be an appropriate exception. *Id.*

The majority "suggest[s]," *ante* at 436–437, that district courts use the prime rate for fixing prejudgment interest where there is no statutory interest rate. Use of the prime interest rate, at least as a starting point, is a sensible approach. "Courts have increasingly looked to the prevailing interest rate ... as [an] indicator of just compensation." *Central Rivers Towing, Inc. v. City of Beardstown,* 750 F.2d 565, 574 (7th Cir.1985). However, in this matter as well, we have recognized that the deter-

mination is "within the trial court's discretion." *Id.; see also United States v. Peavey Barge Line,* 748 F.2d 395, 402 (7th Cir. 1984).

In short, today's decision sets forth useful guidelines to assist the district court in the exercise of its discretion on the matter of prejudgment interest. As the majority also emphasizes, *see ante* at 437, I trust that today's guidelines will not become a rigid litmus test when a district court determines that fulfillment of the congressional intent requires another approach. In such an instance, we have a right, of course, to expect that the district court will provide us with reasoned elaboration for its departure in order that our review may be meaningful.

The majority also addresses the adequacy of the measure of postjudgment interest provided by 28 U.S.C. § 1961. This congressional determination is not at issue in this case. Accordingly, I respectfully decline to express a view on this matter.