**RE/MAX NORTH CENTRAL, INC., Plaintiff,**

v.

**Patricia COOK, f/d/b/a Re/Max Lake and Country, Defendant.**

No. CIV. A. 00–C–1314.

United States District Court,
E.D. Wisconsin.

Dec. 14, 2000.

Troy A. Bader, Michael E. Martinez, Gray, Plant, Mooty, Mooty & Bennet, Minneapolis, MN, for Plaintiff.

Robert W. Roth, Roth & Binn, Brookfield, WI, for Defendant.

## DENYING DEFENDANT'S MOTION FOR STAY OF INJUNCTION

REYNOLDS, District Judge.

Plaintiff RE/MAX North Central, Inc. (RE/MAX), brought this action alleging that defendant Patricia Cook ("Cook") was selling real estate, purporting to be a RE/MAX franchisee, despite RE/MAX's termination of Cook's franchisee rights. RE/MAX alleged that Cook's use of the RE/MAX trademarks and logos constituted a violation of the Lanham Act. Because this case involves a question of federal law, the court has jurisdiction pursuant to 28 U.S.C. § 1331.

On October 13, 2000, RE/MAX filed a motion for a preliminary injunction to enjoin Cook from continuing to use RE/MAX trademarks and logos. On November 7, 2000, the court held an evidentiary hearing on RE/MAX's motion, and on November 13, 2000, the court issued an order granting RE/MAX's motion for the preliminary injunction. Before the court is Cook's motion to stay the preliminary injunction pending appeal before the United States Seventh Circuit Court of Appeals, which the court denies. The facts of this case are laid out in detail in the court's November 13, 2000 decision and order granting RE/MAX's motion for a preliminary injunction. The court will review the facts only briefly in the current order.

## BACKGROUND

In 1993, Cook and RE/MAX entered into a franchise agreement that gave Cook the right to operate a RE/MAX real estate office. The 1993 franchise agreement ("1993 Agreement") was for an initial term of five years, renewable under the same terms for two additional five-year terms. The 1993 Agreement expressly provided that it was governed by the Wisconsin Fair Dealership Law ("WFDL"), Chapter 135 of the Wisconsin Statutes.

In late November 1998, Cook was given formal written notice of her noncompliance with the 1993 Agreement due to her failure to employ a total of five sales associates, as required by the 1993 Agreement. RE/MAX gave Cook 60 days to cure this defect, and Cook cured the defect in January 1999 by hiring more sales associates.

In either April or June of 1999,[1] Cook received a copy of the 1999 Agreement. In June 1999, RE/MAX and Cook began negotiating about the number of sales associates the 1999 Agreement would require Cook to employ. RE/MAX and Cook ultimately agreed that the 1999 Agreement, like the 1993 Agreement, would require Cook to employ a total of five sales associates. In September 1999, Cook received execution copies of the 1999 Agreement. Cook did not sign the 1999 Agreement but instead crossed out the portion of the contract regarding how many sales associates she was required to employ. Cook sent the altered 1999 Agreement back to RE/MAX. RE/MAX indicated to Cook that her changes to the 1999 Agreement were unacceptable and gave her further opportunities to sign the 1999 Agreement.

Cook did not sign the 1999 Agreement. In January 2000, RE/MAX sent Cook a notice of default and termination indicating that the basis for Cook's termination was that Cook had not signed an agreement renewing her franchise rights. The notice gave Cook sixty days to cure this defect but noted that if Cook chose to sign a franchise agreement after March 14, 2000, she would have to sign the 2000 Agree-

1. RE/MAX maintains it sent Cook the 1999 Agreement in April 1999; Cook says she did not receive the 1999 Agreement until June 1999.

ment because the 1999 Agreement expired on March 14, 2000.

On March 27, 2000, Cook signed the 1999 Agreement and returned it to RE/MAX. Shortly thereafter, RE/MAX indicated to Cook that she had not cured the defect because she had signed an expired franchise agreement. RE/MAX gave Cook two choices: 1) sign the 2000 Agreement or 2) sign the 1999 Agreement and a release affirming that Cook would not sue RE/MAX for allowing Cook to sign an expired agreement. RE/MAX continually granted Cook more time to cure the defect by signing a franchise agreement. Cook never signed the 1999 Agreement or the 2000 Agreement. Cook's franchise rights were terminated August 10, 2000. After termination, Cook continued to use RE/MAX's trademarks, logos, and copyrighted materials. On November 13, 2000, the court issued a preliminary injunction, enjoining Cook from continuing to operate as a RE/MAX real estate agent.

## DISCUSSION

██ In analyzing a motion for stay of a preliminary injunction pending appeal, the court must consider 1) whether appellant is likely to succeed on the merits, 2) whether appellant has demonstrated future irreparable injury absent a stay 3) whether a stay would substantially harm other parties to the litigation, and 4) whether a stay is in the public interest. See Glick v. Koenig, 766 F.2d 265, 269 (7th Cir.1985).

### I. Success on the Merits

██ In the present case, Cook argues that she is likely to succeed on the merits of her appeal because the court did not give sufficient deference to the legislative intent behind the Wisconsin Fair Dealership Law ("WFDL"), which was enacted to protect franchisees from unfair treatment by powerful franchisors who have superior economic and bargaining power in the negotiation of dealerships. In granting RE/MAX's motion for a preliminary injunction,

the court did consider the importance and history of the WFDL. The court found, however, that RE/MAX had fulfilled its obligations under the WFDL because RE/MAX had provided Cook with proper notice when Cook was in default status, and RE/MAX provided Cook with the requisite amount of time to cure the defect causing the default.

On January 26, 2000, Cook was properly notified of her default and pending termination and properly given sixty days to cure the defect by signing a franchise agreement. Cook argues that by signing the 1999 Agreement on March 27, 2000, she substantially complied in curing the defect. By signing an expired agreement, however, Cook failed to cure the defect. The defect *was* that Cook had failed to enter into a valid agreement to renew her franchise rights.

██ It is undisputed that after Cook signed the expired 1999 Agreement in March 2000, RE/MAX negotiated with Cook and actually gave her the opportunity to sign the 1999 Agreement after it had expired, so long as Cook signed a release agreeing not to sue RE/MAX for allowing her to sign an expired franchise agreement. Moreover, RE/MAX gave Cook more time and additional opportunities to sign the 2000 Agreement because Cook had maintained that she signed the 1999 Agreement instead of the 2000 Agreement because she did not have a copy of the 2000 Agreement. Cook chose not to sign either Agreement. RE/MAX is not required under the WFDL to continue to give Cook opportunities to cure the defect and enter into a valid agreement indefinitely. Under the WFDL, RE/MAX is required to give Cook notice and sixty days to cure the defect. In the present case, RE/MAX gave Cook much longer than sixty days to cure the defect by entering into a franchise agreement. Although the WFDL is intended to protect franchisees, it does not give a franchisee the right to continue to use the franchisor's trademarks until the franchisor final-

ly agrees to whatever contract terms the franchisee wants. Franchisees cannot hold a franchisor's trademarks hostage in order to force renegotiation of a contract. *See Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 435 (7th Cir.1989).

In addition, Cook argues that she is likely to succeed on the merits of her appeal because under the WFDL, a franchisor may not substantially change the competitive circumstances of a dealership unless sufficient notice is given. Cook argues that the 2000 Agreement changes the competitive circumstances of the dealership because it allows other RE/MAX real estate agents to obtain commercial-only real estate licenses and sell commercial real estate in her geographic area. Based on the current record and the facts developed at the November 7, 2000 hearing, it is not clear to the court that the 2000 Agreement actually changes the competitive circumstances of Cook and RE/MAX's agreement. Cook was not actively involved in the commercial real estate market prior to the 2000 Agreement; the 2000 Agreement does not prohibit or limit Cook's ability to sell commercial real estate, and any licensed real estate broker from anywhere in the state of Wisconsin is already entitled to sell commercial real estate in Cook's geographic area.

The court finds that Cook does not have a substantial likelihood of success on the merits on her appeal.

## II. *Harm to Cook*

The court is aware that Cook's business may suffer some harm from her inability to operate as a RE/MAX real estate agent. Cook is, however, still able to work as a real estate agent, operate her business from the same location, keep all of her clients, and associate with a different real estate franchise operation if she chooses to do so. In Cook's brief supporting a motion for a stay of the preliminary injunction, Cook states that 90% of her business resulted from her association with RE/MAX. Cook presents no evidence supporting this statement. In addition, no evidence was offered at the November 13, 2000 hearing concerning how Cook's association with RE/MAX specifically affects Cook's clientele and her ability to operate her business successfully. Cook argues that she may go out of business due to her disassociation with RE/MAX, and that going out of business constitutes irreparable harm because if Cook is forced to close her office, she will not be able to start over as a RE/MAX real estate broker at a future time. Cook does not explain to the court or offer any evidence regarding why Cook would go out of business due to her disassociation with RE/MAX or why Cook would be unable to start over as a RE/MAX real estate agent at a different time.

The court finds that Cook has not demonstrated that she will suffer irreparable injury if the court does not grant a stay of the preliminary injunction.

## III. *Harm to RE/MAX and the Public*

As discussed in the November 13, 2000 order, RE/MAX's loss of control over its trademarks and goodwill results in irreparable harm to RE/MAX because RE/MAX loses control over the quality of services associated with the RE/MAX name. The public is harmed by consumer confusion. If Cook continues to operate as a RE/MAX real estate broker when, in fact, she is not properly operating as a RE/MAX real estate broker, members of the public will be deceived into thinking Cook is properly affiliated with RE/MAX. Cook is unable to show that an order staying the preliminary injunction is in the public interest and does not cause substantial injury to RE/MAX.

## CONCLUSION

Plaintiff Patricia Cook's motion for a stay of the preliminary injunction issued by order dated November 13, 2000 is **DENIED.**