**RE/MAX NORTH CENTRAL, INC., Plaintiff,**

v.

**Patricia COOK, f/d/b/a Re/Max Lake and Country, Defendant.**

**CIV. A. No. 00–C–1314.**

United States District Court, E.D. Wisconsin.

Aug. 30, 2001.

Troy A. Bader, Michael E. Martinez, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN, for plaintiff.

Robert W. Roth, Roth & Binn, Brookfield, WI, for defendant.

## ORDER DATED _____ GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

REYNOLDS, District Judge.

Plaintiff RE/MAX North Central, Inc. (RE/MAX), brought this action alleging that defendant Patricia Cook ("Cook") sold real estate purporting to be a RE/MAX franchisee after RE/MAX had terminated Cook's franchisee rights. RE/MAX alleged that Cook's use of the RE/MAX trademarks and logos constituted a violation of the Trademark Act of 1964, 15 U.S.C. § 1051, *et. seq.* ("Lanham Act"). Cook filed a counterclaim in this action, alleging that RE/MAX violated the Wisconsin Fair Dealership Law, Chapter 135 of the Wisconsin Statutes ("WFDL"), by unlawfully terminating Cook's franchise rights. Because this action involves a question of federal law, the court has jurisdiction pursuant to U.S.C. § 1331. Before the court is RE/MAX's motion for summary judgment, which the court will grant.

### PROCEDURAL HISTORY

On October 13, 2000, RE/MAX filed a motion for a preliminary injunction to enjoin Cook from using RE/MAX trademarks and logos. On November 7, 2000, the court held an evidentiary hearing on RE/MAX's motion, and on November 13, 2000, the court issued an order ("November Order") granting RE/MAX's motion for the preliminary injunction. The facts of this case are laid out in detail in the November Order. On December 14, 2000, the court issued a decision and order denying Cook's motion to stay the preliminary injunction pending appeal. In the December 14, 2000 order, the court summarized its findings of fact. The court will review its factual findings briefly in the current order.

### BACKGROUND

In 1993, Cook and RE/MAX entered into a franchise agreement that gave Cook the right to operate a RE/MAX real estate office. The 1993 franchise agreement ("1993 Agreement") was for an initial term of five years, renewable under the same terms for two additional five-year terms. The 1993 Agreement expressly provided that it was governed by the WFDL.

In late November 1998, Cook was given formal written notice of her noncompliance with the 1993 Agreement due to her failure to employ a total of five sales associates, as required by the 1993 Agreement. RE/MAX gave Cook 60 days to cure this defect, and Cook cured the defect in January 1999 by hiring more sales associates.

In either April or June of 1999,[1] Cook received a copy of the 1999 Agreement. In June 1999, RE/MAX and Cook began negotiating about the number of sales associates the 1999 Agreement would require Cook to employ. RE/MAX and Cook ultimately agreed that the 1999 Agreement, like the 1993 Agreement, would require Cook to employ a total of five sales associates. In September 1999, Cook received execution copies of the 1999 Agreement. Cook did not sign the 1999 Agreement but instead crossed out the portion of the contract regarding how many sales associates she was required to employ. Cook sent the altered 1999 Agreement back to RE/MAX. RE/MAX indicated to Cook that her changes to the 1999 Agreement were unacceptable and gave her further opportunities to sign the 1999 Agreement.

Cook did not sign the 1999 Agreement. In January 2000, RE/MAX sent Cook a notice of default and termination indicating that the basis for Cook's termination was that Cook had not signed an agreement renewing her franchise rights. The notice gave Cook sixty days to cure this defect but noted that if Cook chose to sign a franchise agreement after March 14, 2000, she would have to sign the 2000 Agreement because the 1999 Agreement expired on March 14, 2000.

Cook did not want to sign the 2000 Agreement because it stated that RE/MAX was permitted to maintain a commercial-real-estate-only RE/MAX office in territories where RE/MAX offices were already located, whereas the 1999 Agreement did not have such a provision. The commercial real estate office contemplated in the 2000 Agreement was not permitted to sell residential real estate, and Cook was not prohibited from selling commercial real estate. All RE/MAX franchisees who entered into franchise agreements after March 14, 2000, signed the 2000 Agreement containing the provision regarding commercial-real-estate-only RE/MAX offices.

On March 27, 2000, Cook signed the 1999 Agreement and returned it to RE/MAX. Shortly thereafter, RE/MAX indicated to Cook that she had not cured the defect because she had signed an expired franchise agreement. RE/MAX gave Cook two choices: (1) sign the 2000 Agreement or (2) sign the 1999 Agreement and a release affirming that Cook would not sue RE/MAX for allowing Cook to sign an expired agreement. RE/MAX continually granted Cook more time to cure the defect by signing a franchise agreement. Cook never signed the release or the 2000 Agreement. Cook's franchise rights were terminated August 10, 2000. After termination, Cook continued to use RE/MAX's trademarks, logos, and copyrighted materials. The November Order enjoined Cook from continuing to operate as a RE/MAX real estate agent.

### *DISCUSSION*

 In the November Order, the court found, based on the evidence in the record at that time, that RE/MAX had demonstrated a substantial likelihood of success on the merits for its claim that Cook violated the Lanham Act by continuing to use the RE/MAX marks after RE/MAX terminated Cook's franchise rights. The court based its decision on the fact that RE/MAX had demonstrated that it had properly terminated Cook's franchise rights under the WFDL because RE/MAX gave Cook notice when Cook was in default status (for not having signed a valid fran-

---

1. RE/MAX maintains it sent Cook the 1999 Agreement in April 1999; Cook says she did not receive the 1999 Agreement until June 1999. Whether Cook received the 1999 Agreement in April or June is immaterial in deciding the pending motion for summary judgment.

chise agreement), and RE/MAX subsequently provided Cook with sixty days to cure the defect causing the default by signing a valid franchise agreement.

Cook maintains that there are material factual disputes regarding whether RE/MAX properly terminated Cook's franchise rights. Specifically, Cook maintains that (1) RE/MAX was not required under Wisconsin law to have its franchisees sign the 2000 franchise agreement after March 14, 2000, and (2) Cook was entitled to continue negotiating regarding the number of sales associates Cook was required to employ because RE/MAX unfairly required her to have five sales associates.[2] The court finds that neither argument advanced by Cook gives rise to a material factual dispute. Whether RE/MAX was required under Wisconsin law to have its franchisees sign the 2000 Agreement after March 14, 2000, is immaterial to the motion pending before the court because it is undisputed that Cook was ultimately given the opportunity to sign *either* the 1999 Agreement and release or the 2000 Agreement after March 14, 2000, in order to cure the defect of not signing a valid franchise agreement, and Cook refused to sign the release and/or the 2000 Agreements.

Cook's assertion that RE/MAX unlawfully terminated her franchise rights under the WFDL because it did not allow her to continue negotiating regarding the number of sales associates that she was required to employ fails as a matter of law. The

WFDL does not require RE/MAX to give Cook unlimited opportunities to enter into a valid franchise agreement. Under the WFDL, RE/MAX is required to give Cook notice and sixty days to cure the defect. In the present case, it is undisputed that RE/MAX gave Cook longer than sixty days to cure the defect by entering into a franchise agreement.[3] Although the WFDL is intended to protect franchisees, it does not give franchisees the right to continually use the franchisor's trademarks until the franchisor finally agrees to whatever contract terms the franchisee wants. Franchisees cannot hold a franchisor's trademarks hostage in order to force renegotiation of a contract. *See Gorenstein Enters., Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 435 (7th Cir.1989). The court finds that RE/MAX complied with the WFDL's default and notice provisions when it notified Cook that she was in default for failure to sign a valid franchise agreement and gave Cook sixty days to sign a valid franchise agreement. Cook maintains that RE/MAX should not have limited her to signing the 1999 Agreement by March 14, 2000, but the fact that RE/MAX allowed Cook to cure the defect by either signing the 1999 agreement by a specific date or signing the 2000 agreement thereafter does not alter the fact that RE/MAX complied with the WFDL's default and notice provisions.[4]

■ In addition to arguing that RE/MAX violated the WFDL's default and

---

**2.** Cook argues that RE/MAX unfairly obligated Cook to employ five sales associates. It is undisputed, however, that the 1993 Agreement, a valid contract entered into by Cook and RE/MAX, required Cook to employ a total of five sales associates. Cook's contention that RE/MAX treated her unfairly by requiring her to employ five sales associates is not relevant to the legal question of whether Cook was in default for not entering into a valid employment agreement.

**3.** Cook argues that RE/MAX violated the WFDL because RE/MAX gave Cook more than sixty days to cure the defect and enter into a valid franchise agreement. Cook presents no legal authority supporting this proposition that franchisors are prohibited from giving franchisees more than sixty days to cure a defect. Because the WFDL was enacted to protect franchisees, the court finds Cook's argument unpersuasive.

**4.** The court notes that it is undisputed that RE/MAX ultimately gave Cook the opportuni-

notice provisions, Cook argues that the court should deny RE/MAX's motion for summary judgment because under the WFDL, a franchisor may not substantially change the competitive circumstances of a dealership unless sufficient notice is given. Cook argues that the 2000 Agreement changes the competitive circumstances of Cook's dealership because the 2000 Agreement allows other RE/MAX real estate agents to obtain commercial-only real estate licenses and sell commercial real estate in her geographic area. In the November Order, the court found that Cook had not demonstrated that the 2000 Agreement was likely to change the competitive circumstances of Cook and RE/MAX's agreement. The court based this finding on the following undisputed facts: Cook was not actively involved in the commercial real estate market prior to the 2000 Agreement; the 2000 Agreement did not prohibit or limit Cook's ability to sell commercial real estate; and any licensed real estate broker from anywhere in the state of Wisconsin was already entitled to sell commercial real estate in Cook's geographic area.

In connection with the pending motion for summary judgment, Cook has presented evidence in support of her assertion that the 2000 Agreement would have harmed the profitability of Cook's business. John R. Beers ("Beers"), Vice President and Chief Operating Officer of Realty Valuation Service, states in an affidavit that the 2000 Agreement would have economically harmed Cook's business because it would have allowed another RE/MAX office to be opened in Cook's territory. Beers testifies that Cook's business would have been harmed, despite the fact that

any additional RE/MAX offices that could have moved into Cook's territory would have sold commercial real estate only, because Cook had positioned herself in the Mukwonago real estate community in such a way that she was poised to sell commercial real estate. Beers also predicts that Mukwonago and the surrounding area will soon develop into a lucrative commercial real estate market. In addition to Beers' affidavit, Cook submits the affidavit testimony of Daniel Long ("Long"), a real estate agent formerly affiliated with RE/MAX, who states that a commercial real estate RE/MAX office opened in Mukwonago would seriously harm Cook's business because it would impair Cook's ability to actively participate in the commercial real estate market. Cook maintains that given the new evidence she has presented, there is a material fact dispute with regard to the effect the 2000 Agreement would have on her business, and that the dispute precludes dismissing the action at the summary judgment stage.

The Seventh Circuit, however, has held that when a franchisor makes a system-wide non-discriminatory change, the franchisor does not violate the WFDL even if the change significantly harms a particular franchisee's profitability. *See East Bay Running Store, Inc. v. NIKE, Inc.*, 890 F.2d 996, 1000 (7th Cir.1989). In the present case, it is undisputed that the change in the 2000 Agreement (which allows commercial-real-estate-only RE/MAX offices to open in territories which already have residential real estate RE/MAX offices) was a system-wide change that applied to every RE/MAX franchisee. It is undisputed that the 2000 Agreement was the only agreement that RE/MAX franchisees could sign after March 14, 2000.[5] Under

---

ty to sign the 1999 Agreement and a release after March 14, 2000, but Cook chose not to sign the 1999 Agreement and release.

**5.** RE/MAX maintains that even under the 1999 Agreement, RE/MAX would have been permitted to open commercial-real-estate-only RE/MAX offices in areas that already had RE/MAX residential real estate offices. RE/

Seventh Circuit law, a non-discriminatory, system-wide change does not constitute a "substantial change in competitive circumstances," and the court therefore need not consider whether RE/MAX had "good cause" to make the change. *See Praefke Auto Elec. & Battery Co. v. Tecumseh Prods. Co.,* 110 F.Supp.2d 899, 915 (E.D.Wis.2000).

Cook also argues that RE/MAX discriminated against her by requiring Cook to employ five sales associates. The 1993 Agreement, the 1999 Agreement, and the 2000 Agreement all required Cook to employ five sales associates. Cook cannot claim that the five sales associates requirement was a discriminatory change that affected competitive circumstances because the five sales associates requirement in the 2000 Agreement was not a change.

Based on the foregoing, the court finds that RE/MAX did not violate the WFDL by making a substantial change that affected the competitive circumstances of Cook's business without good cause.[6]

The court finds that Cook has not presented evidence sufficient to survive a motion for summary judgment on her claim that RE/MAX violated the notice and cure provision of the WFDL or that RE/MAX violated the WFDL by making a substantial change that affected the competitive circumstances of Cook's business. The court will therefore grant RE/MAX's motion for summary judgment with respect to Cook's counterclaim that RE/MAX violated the WFDL. The court will grant RE/MAX's motion for summary judgment with respect to its claim that Cook violated the Lanham Act by continuing to use RE/MAX's trademarks after RE/MAX had terminated Cook's RE/MAX franchise be-

cause the court finds that RE/MAX properly terminated Cook's franchise rights and that Cook continued to operate as a RE/MAX real estate agent after her franchise rights had been terminated.

### CONCLUSION

Plaintiff RE/MAX North Central, Inc.'s motion for summary judgment is **GRANTED.**

Plaintiff RE/MAX North Central, Inc., shall serve and file a brief, and a detailed accounting, with respect to all damages and attorney fees to which it believes it is entitled **on or before September 28, 2001.** Defendant Patricia Cook shall serve and file a response on or before **October 12, 2001.**

---

MAX contends that the 2000 Agreement merely states this explicitly.

**6.** Cook also seems to argue that RE/MAX violated a duty of good faith and fair dealing in

its negotiations with her. Cook has not sufficiently developed this legal argument or presented sufficient evidence for a reasonable juror to find that RE/MAX violated a duty of good faith and fair dealing.