Kelly MERK, et al., Plaintiffs,

v.

JEWEL FOOD STORES, DIVISION OF
JEWEL COMPANIES, INC., Defendant.

No. 85 C 7876.

United States District Court,
N.D. Illinois, E.D.

April 9, 1990.

Daniel R. Formeller, William J. Cremer and Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, Ill., for plaintiffs.

Max G. Brittain, Jr., Marcia E. Goodman and John J. Murphy, Jr., Kovar Nelson Brittain Sledz & Morris, Chicago, Ill., for defendant.

## OPINION

POSNER, Circuit Judge (sitting by designation).

This is a class action by employees of Jewel Food Stores, the grocery chain, against the chain, charging that it reduced their wages below the level fixed in the collective bargaining agreement between the company and the union representing the employees. Jewel contends that at the same time it signed the collective bargaining agreement it made an oral side-agreement with the union, a "reopener" agreement which provided that upon a designated contingency coming to pass (namely the entry of a particular competitor into Jewel's market) the "economic" provisions of the agreement (e.g., wages and hours) would be repealed. The plaintiffs deny that any such agreement was made and further argue that if it was made, still it was invalid for a variety of reasons. The suit is under section 301 of the Taft–Hartley Act, 29 U.S.C. § 185.

Before the trial, I granted partial summary judgment on three issues that, because of their novelty, merit discussion in a published opinion; but I issued no opinion at that time. The trial resulted in a jury verdict for Jewel, and Merk's post-trial motions raise a fourth issue that merits such discussion. The other issues raised by Merk's motions I have resolved in an unpublished order, issued today, in which I direct the entry of judgment for Jewel in accordance with the jury's verdict.

■ 1. The suit is on behalf of all Jewel employees who received the lower wage that the company set in purported reliance on the oral reopener. Originally I ruled that employees who were hired *after* the lower wage was in place have no cause of action and therefore are not entitled to any of the damages that the plaintiffs have sought even though they are part of the class. I based this ruling on the absence of any evidence that these employees signed on with Jewel in the expectation that they would receive a retroactive raise because the collective bargaining agreement had been violated. This is true but (as both sides now agree) irrelevant. These employees are third-party beneficiaries of the agreement, and they are entitled to its benefits unless there was a valid oral reopener cutting down on those benefits as they appear in the written agreement.

■ 2. The complaint seeks punitive damages for what the plaintiffs describe as Jewel's "outrageous" conduct in fabricating an oral reopener. I agree with Jewel, and with the majority of courts that have addressed the question, Annot., *Award of Punitive Damages Under § 301 of Labor Management Relations Act*, 71 A.L.R.Fed. 221 (1985), that punitive damages are not available in a section 301 suit. The Supreme Court has so held with regard to union defendants sued for breach of their duty of fair representation, *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979), and it would be unreasonable to distinguish between union and

employer defendants in this regard, or between suits for breach of contract and suits for breach of the duty of fair representation:

a. When the Taft–Hartley Act was passed in 1947, punitive damages for breach of contract were virtually, perhaps completely, unknown. Section 301 of the Act does not create a complete remedial scheme. Essentially it just makes collective bargaining agreements actionable, and leaves the incidents of the 301 suit—statute of limitations, other defenses, third-party beneficiaries, parol evidence rule, and all the rest, including remedy—to be worked out by the courts in the exercise of their ill-defined but adequate power to make federal common law. In interpreting other statutes that create a federal right without specifying the details of remedy and procedure, notably 42 U.S.C. § 1983, a statute first passed in 1871, the Supreme Court has looked to the common law at the time of enactment. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). If that approach is taken here, it becomes evident that punitive damages are unavailable in section 301 suits.

b. Punitive damages are of course far more common in tort cases than in contract cases. Breach of the duty of fair representation is a form of breach of fiduciary duty, and is therefore a tort. Since punitive damages are not available for breach of the duty of fair representation (*Foust*), they surely are not available for a simple breach of contract.

c. Partly in explanation of *Foust*, partly related to the point just made, federal policy aims to promote harmonious labor relations; this is one of the justifications for the mildness of the National Labor Relations Board's remedial powers. 442 U.S. at 52, 99 S.Ct. at 2127; *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 10, 61 S.Ct. 77, 78, 85 L.Ed. 6 (1940). That aim would be deflected if punitive damages were available in section 301 suits. The possibility on the one side of recovering and on the other side of having to pay potentially astronomical damages would place a cloud over labor negotiations, engendering formality and suspicion inimical to the harmonious resolution of labor disputes.

All three reasons I have just given are independent of whether the defendant is a union or an employer. I am convinced therefore that the Supreme Court would not allow punitive damages to be awarded against employers for violating collective bargaining agreements. At the very least, it would not allow the award of punitive damages in a case such as the present, a case at worst of *simple* breach of contract (this much the jury's verdict for Jewel makes clear), uncomplicated by evidence of fraud or other tortious misconduct. For even outside the labor field, punitive damages are not awarded for simple breaches of contract. *Patton v. Mid–Continent Systems, Inc.*, 841 F.2d 742, 750–51 (7th Cir.1988).

3. The next question is the force to be ascribed to an oral reopener agreement. To Jewel, it means that the pertinent provisions of the contract were repealed when the reopening occurred, and therefore the employees have no further remedy under the contract. Jewel concedes that the abrogation of the contract does not dissolve the parties' duty to bargain collectively in good faith. It merely puts the parties back to square one—that is, to the situation before there was a collective bargaining agreement—with respect to the provisions covered by the reopener. That state is not quite Hobbes's state of nature. The parties are obligated to bargain in good faith, and only when, having done so, they find themselves at loggerheads ("impasse" in the jargon), are they free to resort to their economic weapons—the strike, the lock-out, the (as here) unilateral reduction in wages. But the obligation to bargain in good faith is imposed by section 8(d) of the National Labor Relations Act, 29 U.S.C. § 158(d), not by contract, and so it cannot be enforced by a suit under section 301 of the Taft–Hartley Act.

The plaintiffs concede that "reopener" is a term of art in the labor lexicon and that in its recent decisions the Labor Board has defined reopener just as Jewel does—as meaning repeal of the provisions of the

collective bargaining agreement that are subject to the reopener. *Speedrack, Inc.*, 293 N.L.R.B. No. 128, at pp. 3–7 (1989). But they say that if Jewel and the union agreed to a reopener, they were not using the term as one of art. They meant not to repeal the relevant provisions of the contract but simply to suspend their operation *provided* that Jewel bargained in good faith and reduced wages only when, having bargained in good faith, the parties reached an impasse. And they say the condition was not fulfilled—Jewel didn't bargain in good faith but instead implemented a fixed pre-existing plan to reduce wages—and therefore that the terms of the reopener were not fully honored. So the reopener was never activated.

When persons in a trade or business or other activity put into a contract (oral or written) a term that is a term of art within the particular trade or business or activity—that has, in other words, a well understood meaning in the particular community in which the contract was made—the parties can be presumed to have used the term with that meaning. Cf. White & Summers, Handbook of the Law Under the Uniform Commercial Code 100 (2d ed. 1980). The plaintiffs have presented no contrary evidence. The union had its remedies under the National Labor Relations Act against Jewel's bargaining in bad faith. There is no indication it negotiated for a contractual remedy as well.

4. The previous point assumed the propriety of oral reopeners, but the plaintiffs also argue that an oral reopener that limits rights conferred by a collective bargaining agreement is against federal labor policy. They rely on cases that appear to disallow oral modifications of such agreements, especially where the modification is of a pension or welfare trust established by the agreement, or of a provision relating to governance. *Central States, Southeast & Southwest Areas Pension Fund v. Behnke,* 883 F.2d 454, 459–60 (6th Cir.1989); *NLRB v. Westinghouse Broadcasting & Cable, Inc.,* 849 F.2d 15, 19 (1st Cir.1988); *Waggoner v. Dallaire,* 649 F.2d 1362 (9th Cir.1981). Yet it is a settled principle, firmly bottomed on section 8(d) of the National Labor Relations Act, that the collective bargaining agreement itself need not be in writing unless one of the parties requests that it be. 29 U.S.C. § 158(d); *Gariup v. Brichler Ceiling & Interior Co.,* 777 F.2d 370, 373–74 (7th Cir.1985); *Central States, Southeast & Southwest Areas Pension Fund v. Behnke, supra,* 883 F.2d at 459; *Eastern Washington Distributing Co.,* 216 N.L.R.B. 1149, 1151 (1975). How to weave together the two threads? The answer is hinted at in *Price v. International Brotherhood of Teamsters,* 457 F.2d 605, 609 (3d Cir.1972), a case paradoxically relied on by the plaintiffs in this case. Statutes like Landrum–Griffin and ERISA impose obligations in the *administration* of collective bargaining contracts; oral modifications, unknown to the union rank and file, can upset entitlements created by the contracts and enforced in administering them. But these statutes do not seek to interfere with the negotiation of the agreement—the domain of the National Labor Relations Act, section 8(d) of which is a considered decision to allow oral agreements when both parties prefer them. *Hamilton Foundry & Machine Co. v. International Molders & Foundry Workers Union,* 193 F.2d 209, 214 (6th Cir.1952). If oral agreements are permissible with both parties' consent, and they are, then an agreement part written and part oral should also be permissible, and that is what we have here. The oral reopener was adopted in the midst of contract negotiations; the negotiations were concluded and the contract was signed after the oral reopener agreement was made. It did not modify the contract; it was part of the contract. It was not against federal labor policy.