Kelly **MERK**, Joseph Staszewski, Vickie Menagh, Donna McCormick, David Therkield, John Malone, Marlene Wagner, Michael Demare, Wayne Volker, Eleanore Collins, Andrew Kachik, Patricia Todd, Kevin Quaid, and Linda Singleton, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**JEWEL FOOD STORES, DIVISION JEWEL COMPANIES, INC., and United Food and Commercial Workers Union Local No. 881, chartered by United Food and Commercial Workers International Union, AFL–CIO and CLC, Defendants.**

No. 85 C 7876.

United States District Court, N.D. Illinois, E.D.

Nov. 24, 1992.

Daniel Richard Formeller, Howard K. Priess, II, William J. Cremer, Francis A. Spina, Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for plaintiffs.

Marcia E. Goodman, Mayer, Brown & Platt, Max G. Brittain, Jr., John J. Murphy, Jr., Kovar, Brittain, Sledz & Morris, Chicago, IL, for defendant Jewel Food Stores Div.

Robert Karmel, Neal D. Rosenfeld, Jairus M. Gilden, Rosenfeld & Karmel, Chicago, IL, for defendant United Food and Commercial Local 881.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs, representing a class comprising approximately 2,000 former employees of Jewel Food Stores ("Jewel"), move for entry of judgment on all issues of liability related to Count I of the third-amended complaint. Additionally, plaintiffs seek (1) adjudication of issues related to their entitlement to prejudgment interest on the damages fund created in conjunction with this action, and (2) to reopen discovery with respect to the issue of damages. Jewel has filed a cross-motion for entry of judgment on the liability issue, alternatively seeking additional evidentiary hearings concerning liability. For the reasons detailed below, we deny Jewel's motion for entry of judgment or alternatively for further evidentiary proceedings, and we grant plaintiffs' motions for entry of judgment, for adjudication of prejudgment interest issues, and for the conduct of limited discovery.

### I. Background

Jewel operates approximately 180 supermarkets in and around Chicago, employing some 15,000 employees represented by Local 881 of the United Food and Commercial Workers Union (the "Union"). In September of 1982, the Union began negotiations with Jewel for a new collective bargaining agreement ("CBA") to run from September 15, 1982 to June 15, 1985. Negotiations stalled, however, as Jewel insisted on a "most favored nations" clause, whereby Jewel would have the right to reduce wages unilaterally to the level achieved by any competing food store that might negotiate a more favorable contract with the Union during the term of the CBA. Jewel anticipated that Cub Foods, a warehouse-style grocery store chain, was poised to enter the Chicago market. The Union refused Jewel's demand for a "most favored nations" clause and, after protracted negotiations, the parties reached an agreement without such a clause. The agreement was reduced to writing and ratified by the Union membership on January 27, 1983, and took effect retroactive to September 19, 1982.

Unfortunately for all involved, the CBA did not embody the entire agreement between the parties. In light of Jewel's enduring fear regarding the entry of Cub

Foods, Union president Fred Burki and two Jewel representatives reached a clandestine oral agreement at an informal hallway meeting late in the evening of January 23, 1983. Although the parties did not dispute the existence of the oral agreement, the terms were hotly contested. Plaintiffs contended that the Union only agreed to "sit and discuss" wages before the CBA expired if Cub Foods actually entered the market. Jewel claimed that the Union agreed to a "reopener" clause, granting Jewel the same bargaining rights it had during the pre-CBA negotiations, contingent on Cub Foods' entry. In any event, neither Jewel nor the Union informed the Union rank and file of the existence of the oral agreement.

With Cub Foods' entry into the Chicago market in 1983, Jewel announced the reopening of contract negotiations. After reaching an impasse, on February 26, 1984, Jewel unilaterally implemented its final offer, cutting wages below levels mandated by the CBA. The Union immediately filed suit in the United States District Court for the Northern District of Illinois, alleging unfair labor practices. Ultimately, the parties resolved their differences, with the Union agreeing to drop the suit and Jewel agreeing to award backpay to its current employees. Plaintiffs represent a class of individuals who were employed by Jewel at the time of the unilateral wage reduction, but who quit, retired or were fired before the settlement. At Jewel's insistence, plaintiffs and the represented class were specifically left out of the settlement agreement. As such, plaintiffs filed this action against the Union for breach of its duty of fair representation and against Jewel for breach of contract. On June 26, 1986, this court granted summary judgment in favor of the Union, holding that the Union owed no duty of fair representation to former employees. *Merk v. Jewel Food Stores*, 641 F.Supp. 1024, 1032 (N.D.Ill.1986), *aff'd*, 848 F.2d 761 (7th Cir.) ("*Merk I*"), *cert. denied*, 488 U.S. 956, 109 S.Ct. 393, 102 L.Ed.2d 382 (1988). The remaining claim against Jewel for breach of the CBA went to a jury, which found in favor of Jewel (*i.e.*, that the Union had

agreed to a "reopener" provision). After plaintiffs' unsuccessful post-trial motions, the court entered judgment in favor of Jewel. *Merk v. Jewel Food Stores*, 734 F.Supp. 330, 331 (N.D.Ill.1990) (Posner, J., sitting by designation). Plaintiffs appealed, and the Seventh Circuit reversed the judgment, holding that the secret "reopener" provision violated federal labor policy and, hence, was unenforceable. *Merk v. Jewel Food Stores*, 945 F.2d 889, 899 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992) ("*Merk II*"). The cause was remanded to this court for further proceedings consistent with the Seventh Circuit's ruling in *Merk II*.

## II. Entry of Judgment

In support of their motion for entry of judgment, plaintiffs contend that without the reopener provision, Jewel had no contractual right to reduce their wages and that liability is therefore established. Plaintiffs point to jury instruction 17(2), an instruction uncontested by Jewel, which provides: "If you find that there was no oral reopener agreement, then you must find for the Plaintiffs." Additionally, plaintiffs cite Jewel's own memorandum in support of its motion to bifurcate issues for trial, summarizing the liability issue as follows: "Liability hinges solely on the existence of the economic reopener agreement...." In response, Jewel argues, first, that invalidation of the reopener renders the entire CBA unenforceable because the reopener provision was essential to the entire agreement. Second, Jewel maintains that the action is time-barred by the federal six-month statute of limitations for actions arising out of unfair labor practices. Lastly, Jewel argues that, regardless of whatever the oral agreement of January 1983 may have provided and regardless of its enforceability, the Union agreed in January of 1984 to reopen the negotiations. We address each of Jewel's "defenses" seriately.

### A. Severability

■ It is settled law that the invalidation of a CBA provision which runs afoul of

the public policy will render the entire CBA unenforceable where the "forbidden provision is so basic to the whole scheme of [the CBA] and so interwoven with all its terms that it must stand or fall as an entirety." *National Labor Relations Bd. v. Rockaway News Supply Co.*, 345 U.S. 71, 78, 73 S.Ct. 519, 523, 97 L.Ed. 832 (1953); *see also National Labor Relations Bd. v. Custom Sheet Metal & Serv. Co.*, 666 F.2d 454, 460 (10th Cir.1981). As framed by Jewel, the question currently confronting the court is as follows: Was the reopener provision so basic to the whole scheme of the CBA and interwoven with its terms to such an extent as to affect its enforceability entirely? Assuming that this issue has not been waived, we can only answer the above question negatively.

▪ The gravamen of Jewel's argument that the reopener provision may not be severed from the remaining terms of the CBA is that the oral side agreement broke the impasse in the initial negotiations between the Union and Jewel. In this sense, according to Jewel, the invalid provision is essential to the CBA in its entirety as the CBA would not have existed (at least in the form agreed upon) in the absence of the reopener provision. Jewel's focus, however, is misplaced. Severability depends on the character of the invalidated provision in reference to the remaining terms of the CBA, and not in reference to the preliminary negotiations culminating in the CBA. Although the Seventh Circuit in *Merk II* characterizes the reopener provision as "fundamental," and "central," the context of the discussion is ultimately the *duration* of the CBA. *Merk II*, 945 F.2d at 893, 895–96. Respecting the remaining provisions of the CBA, the court summed up the impact of the reopener as follows: "Thus Union members who reasonably believed that they were guaranteed a fixed rate of pay for the duration of the CBA unexpectedly found their wages slashed at mid-term." *Id.* at 896. Viewed in such a manner, the only provision modified by the reopener is that which provides that the CBA will re-

main in effect for three years. That the reopener is not essential to the enforcement of the remaining provisions of the CBA is evident upon comparing the effect of its invalidation against the effect of the invalidation of the relevant provision in *Custom Sheet Metal*, a case where the entire CBA was held unenforceable. In that case, the court invalidated a minimum qualifications provision of a CBA which referred to only two classifications of workers who could be employed by the company—journeymen and apprentice sheet metal workers. *Custom Sheet Metal*, 666 F.2d at 460. Because the wage scale in the CBA was directly tied to the classification scheme, the court concluded that the invalid provision was "truly vital" to the CBA in its entirety. *Id.* Unlike the remaining wage provisions in *Custom Sheet Metal*, enforcing the remaining provisions of the present CBA does not present this court with a logical impossibility. After severance of the unenforceable reopener, the "new contract" adequately provides for the determination of back pay for the period between September, 1982, and June, 1985. *See Local 206 v. R.K. Burner Sheet Metal, Inc.*, 859 F.2d 758, 761 (9th Cir.1988).

More significantly, rendering the entire CBA unenforceable would undermine the Seventh Circuit's decision in *Merk II*. As the court noted, "[a]n economic reopener provision permits the company to reopen all economic terms of the CBA upon occurrence of the condition precedent. Negotiations may then proceed as if the parties were bargaining over a totally new contract...." *Merk II*, 945 F.2d at 891. Thus, enforcing the reopener means, by definition, rendering the entire [1] CBA unenforceable. The court in *Merk II*, however, held the secret reopener invalid as a violation of national labor policy. *Id.* at 896. Striking the entire CBA would amount to the same result as enforcing the reopener provision, a result the Seventh Circuit clearly condemned by implication. This is-

---

**1.** In using the term "entire," we recognize that the reopener affects only the economic terms of the CBA. However, for purposes of this lawsuit, the CBA is confined to its economic terms because plaintiffs seek only backpay.

sue being decided by necessary implication, we are bound on remand to follow the will of the Seventh Circuit. *See Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 231–32 (7th Cir.1988).

### B. The Applicable Statute of Limitations

██ Given the Seventh Circuit's refusal in *Merk II* to enforce the reopener provision on public policy grounds, Jewel once again argues that the six-month limitations period of *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), governing "hybrid" actions brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, bars the current suit. Odd would be the case that survived two separate appeals only to be time-barred at last on remand. The question of the applicable statute of limitations previously has been analyzed by this court in significant detail. *See Merk,* 641 F.Supp. at 1024. In that opinion, we held that, after dismissal of the unfair representation claim against the Union, this action resembled the "straightforward suit under § 301" against the employer alone as in *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), rather than the "hybrid" action against both the employer and the union as in *Del Costello. Merk,* 641 F.Supp. at 1035. Accordingly, we concluded that the appropriate statute of limitations period, as borrowed from Illinois law, was five years in length. *Id.* at 1036–37. Relying on *International Union of Elevator Constructors v. Home Elevator Co.,* 798 F.2d 222 (7th Cir.1986), the Seventh Circuit concurred in our judgment. *Merk I,* 848 F.2d at 762 n. 2.

██ As the law of the case, our adoption of the five-year statute of limitations period will stand unless Jewel can show either a substantial change in facts underlying our previous decision, a change in the applicable case law or gross error in our earlier ruling. *See Miles v. Kohli & Kaliher Assoc., Ltd.,* 917 F.2d 235, 241 (6th Cir.1990); *Wheeler v. City of Pleasant Grove,* 896 F.2d 1347, 1350 (11th Cir.1990); *Waggoner v. Dallaire,* 767 F.2d 589, 593 (9th Cir. 1985), *cert. denied,* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 601 (1986). The change relied on by Jewel is the assertion that "[a] refusal to enforce a contract provision on public policy grounds is simply not the same as a claim that a reopener clause does not exist." Jewel, however, neither explains the pertinence of this distinction nor cites any authority supporting deviation from our prior holding under such circumstance. In any event, Jewel's contention misses the mark as it focuses on its affirmative defense rather than plaintiffs' theory of the case. It is clear that plaintiffs' theory remained steadfast throughout the pendency of the proceedings, *i.e.,* that Jewel breached its contractual obligations by unilaterally lowering wages and benefits in February 1984. Plaintiffs' claim has never been premised upon the theory that they were damaged as a result of the secret reopener agreement. That Jewel may have demonstrated the existence of the reopener agreement, a hollow victory in light of the Seventh Circuit's ruling in *Merk II,* does not transform this case into the "hybrid" case governed by the six-month limitations period. We therefore leave undisturbed our prior ruling that the five-year limitations period borrowed from Illinois contract law governs this action, and plaintiffs' claim is timely.

### C. Allegations of a Second Agreement to Reopen Negotiations

██ Despite its sole reliance on the January 1983 oral reopener provision at the time of trial, Jewel now asserts that the Union agreed to a second reopener provision in January of 1984. As such, Jewel maintains that a fact issue remains which precludes issuance of a judgment in favor of plaintiffs. We disagree. Apart from any procedural defects in Jewel's latest assertion, this second reopener provision (if it in fact exists) suffers from the same flaw as the January 1983 reopener, *i.e.,* it was not ratified by the Union's rank and file. *See Merk II,* 945 F.2d at 896. Moreover, it is undisputed that such a second reopener provision would represent a modification or

supplement entered into *after* execution of the CBA. Consequently, § 2.6 of the CBA applies and, in that the alleged second reopener was not in writing, it is rendered unenforceable.[2] *See Merk v. Jewel Food Stores*, 702 F.Supp. 1391, 1401 (N.D.Ill. 1988).

In sum, Jewel cannot escape liability for the back wages due plaintiffs. Plaintiffs' motion for entry of final judgment is granted, and Jewel's cross-motion is denied.

### III. Prejudgment Interest

In an order dated January 25, 1990, Judge Posner ruled that, in the event that plaintiffs prevail on the liability issue, "plaintiffs are entitled to prejudgment interest as a matter of law." *Merk v. Jewel Food Stores*, No. 85–7876, slip op. at 13, 1990 WL 16281 (N.D.Ill. Jan. 25, 1990) (citing *Gorenstein Enterprises v. Quality Care–USA*, 874 F.2d 431, 436 (7th Cir. 1989)). Half-heartedly, Jewel now requests this court reconsider Judge Posner's order, arguing that the issue was not fully briefed and that the "relative equities" justify exercising our discretion in denying prejudgment interest. We reject this argument. In *Gorenstein*, the case cited by Judge Posner, the Seventh Circuit makes clear that "prejudgment interest should be presumptively available to victims of federal law violations." *Gorenstein*, 874 F.2d at 436; *see also In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1331 (7th Cir.1992). Jewel has presented nothing to overcome this presumption. Thus, we are left with the following unresolved issues: (1) the rate of interest to be applied; (2) whether such interest shall be compounded; and (3) if so, with what frequency the compounding will occur.

Jewel all but concedes that the proper rate of interest is the prime rate and that it should be compounded yearly. Plaintiffs, however, request more. First, pointing to *Gorenstein*, plaintiffs assert that the proper rate of interest is that applicable to an unsecured loan. However, in that decision, the court merely pointed to a potential problem with the general rule it had favored in the opinion: use of the prime rate. *Gorenstein*, 874 F.2d at 436. The court explained: "We do not want to straightjacket the district court judges but we do want to caution them against the danger of setting prejudgment interest rates too low by neglecting the risk, often nontrivial, of default." *Id.* at 437. The risk of default in this case, however, can only be described as "trivial." Jewel is neither a small business, nor was its solvency been threatened by competition from Cub Foods. Furthermore, the *Gorenstein* court explains that the prime rate does include a "rough estimate of the interest rate necessary to compensate plaintiffs not only for the loss of the use of their money but also for the risk of default." *Id.* at 436; *see also Amoco Cadiz*, 954 F.2d at 1332 ("a court should use the 'prime rate'— that is, the rate banks charge for short-term unsecured loans to creditworthy customers"). Accordingly, prejudgment interest will be awarded at a rate of interest equivalent to the prime rate over the relevant period of time.

There can be no doubt that interest will be compounded in this case, the relevant question being how often. Jewel notes that most labor disputes resulting in awards of back pay receive prejudgment interest compounded no more often than annually.[3] In response, plaintiffs cite awards in cases not involving labor disputes and accuses Jewel of "improperly and intentionally" withholding the back wages. While perhaps literally true when viewed with hindsight, this sort of mudslinging does not justify compounding prejudgment interest more frequently than is the common practice in labor disputes, *i.e.*, annually. Accordingly, prejudgment inter-

---

2. Section 2.6 provides: "This agreement is subject to amendment, alteration or addition only by a subsequent written agreement between, and executed by, the employer and the union."

3. Jewel cites the following cases, all awarding prejudgment interest compounded annually:

*Delaney v. Tanzler*, 55 FEP Cases (BNA) 40, 43 (M.D.Fla.1984); *McQueen v. Maguire*, 53 FEP Cases (BNA) 1821, 1839, 1990 WL 106769 (S.D.N.Y.1990); *Jepsen v. Florida Bd. of Regents*, 37 FEP Cases (BNA) 312 (N.D.Fla.1982), *aff'd*, 754 F.2d 924 (11th Cir.1985).

est in this case will be compounded on an annual basis.

## IV. Limited Discovery

Plaintiffs' motion to reopen discovery with respect to damages is hereby granted. As noted in plaintiffs' reply brief, the stipulations as to compensatory damages agreed upon by the parties do state that additional verification would need to take place. Furthermore, there remains the weighty matter of identifying those other than the named plaintiffs entitled to back wages pursuant to the finding of liability against Jewel. Jewel has not specifically contested plaintiffs' proposed discovery plan. Subject to reconsideration, we adopt the plan proposed by plaintiffs in their motion to reopen discovery.

## V. Conclusion

For the reasons set forth above, we deny Jewel's motion for entry of judgment or alternatively for further evidentiary proceedings, and we grant plaintiffs' motions for entry of judgment, for adjudication of prejudgment interest issues, and for the conduct of limited discovery. It is so ordered.