**In re Leonard ROSEN, Debtor.**

**Janet Sculler f/k/a Janet Rosen and Nagel & Rice, Plaintiffs,**

**v.**

**Leonard Rosen, Defendant.**

**Bankruptcy No. 191–10755–260.**
**Adversary No. 191–1284–260.**

United States Bankruptcy Court,
E.D. New York.

March 24, 1999.

Nagel, Rice & Dreifuss, by Bruce H. Nagel, Livingston, NJ, for Plaintiffs.

Zivyak, Klein & Liss, by Jeffrey L. Zivyak, New York City, for Debtor/Defendant.

## DECISION ON PLAINTIFFS' COMPLAINT OBJECTING TO DISCHARGEABILITY

CONRAD B. DUBERSTEIN, Chief Judge.

### MEMORANDUM OPINION

On February 8, 1991, Leonard Rosen, the Debtor herein, (hereinafter "Mr. Rosen," the "Debtor" or the "Defendant"), filed a petition for relief under Chapter 7 of the Bankruptcy Code. He received a discharge on October 5, 1992. The instant adversary proceeding was instituted by Janet Sculler f/k/a Janet Rosen [1] (hereinafter "Mrs. Sculler" or "formerly Mrs. Rosen") and the law firm which represented Mrs. Sculler in the matrimonial action, Nagel, Rice & Dreifuss, Esqs. f/k/a Nagel & Rice, Esqs.,[2] (collectively, the "Plaintiffs"). The complaint sought to have certain debts allegedly due the Plaintiffs from the Debtor deemed nondischargeable pursuant to §§ 523(a)(4) and (a)(5) of the Bankruptcy Code.[3] The complaint also sought to have

---

**1.** Following the issuance of a judgment of divorce from Leonard Rosen dated June 15, 1988, Janet Rosen married Leonard Sculler (hereinafter "Mr. Sculler") resulting in her name change to Janet Sculler.

**2.** The law firm of Nagel & Rice, Esqs., since the filing of this adversary proceeding has changed its name to Nagel, Rice & Dreifuss, Esqs. It will hereinafter be referred to as "The Nagel Firm" throughout this opinion.

**3.** All further statutory citations are to the Bankruptcy Code, 11 U.S.C. § 101 et seq., unless otherwise noted, and will hereinafter be referred to only by the appropriate section number.

the Debtor's discharge denied. Debtor filed an answer which denied the allegations in the complaint. Thereafter, this court conducted a trial, at which time the Plaintiffs withdrew that portion of its complaint which sought a denial of a discharge pursuant to § 727 due to the fact that the Debtor had been granted a discharge. Following the trial of the issues the parties submitted memoranda of law. Upon consideration of the pleadings and the memoranda of law, as well as the arguments presented at trial, for the reasons stated below I conclude that certain of the debts are nondischargeable, and others are dischargeable as hereinafter set forth. Pursuant to Federal Rule of Bankruptcy Procedure 7052, this opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

### Facts

On June 15, 1988, Judge Lawrence Lerner of the Superior Court of New Jersey granted a final judgment of divorce dissolving the marriage of plaintiff, Janet Sculler, then Janet Rosen, and Leonard Rosen, the Debtor herein. The judgment provided, *inter alia,* for an equitable distribution of the marital property, and ordered the Debtor to make child support payments to his former wife. She was not awarded alimony or maintenance. Additionally, as set forth below, pursuant to orders of the matrimonial court, Mrs. Sculler and the Nagel Firm were awarded a total of $109,216.27 in fees and disbursements. The schedule which accompanied the Debtor's Chapter 7 petition listed the debts arising out of the aforementioned state court orders.

On May 24, 1991, Plaintiffs commenced the instant adversary proceeding seeking to have the debts owed to Mrs. Sculler and

the Nagel Firm deemed nondischargeable pursuant to §§ 523(a)(4)[4] and 523(a)(5),[5] and also to have the Debtor's discharge denied pursuant to § 727.[6] That part of the complaint relating to the discharge was withdrawn as has already been noted. The original complaint contained fourteen separate claims for relief. The Debtor denied essentially all of the allegations charged in the complaint and simultaneously filed a motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012, to dismiss certain claims for relief based on §§ 523(a)(4) and 727 upon the grounds that each claim failed to plead fraud with sufficient particularity as required by Federal Rule of Civil Procedure 9(b). In opposition, the Plaintiffs made a cross-motion requesting the denial of the Debtor's motion, or in the alternative, for leave to amend their complaint pursuant to Federal Rule of Civil Procedure 15.

On November 6, 1991, this Court entered an order, dismissing the seventh, eighth, ninth, eleventh, thirteenth, and fourteenth claims for relief in Plaintiffs' original complaint for failure to plead fraud with sufficient particularity, with leave to amend the complaint.[7]

Of the remaining claims for relief, the first through fifth sought legal fees awarded to Mrs. Sculler and the Nagel Firm pursuant to the judgment of divorce dated June 15, 1988, and state court orders dated November 4, 1987, October 11, 1989, February 22, 1990, July 25, 1990, and August 31, 1990, as follows:

(1) The November 4, 1987 order directed the Debtor to pay to the Nagel Firm

---

**4.** Section 523(a)(4) refers to debts excepted from discharge for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

**5.** Section 523(a)(5) refers to debts excepted from discharge, in pertinent part, to a spouse, or former spouse, for alimony or maintenance

in connection with a divorce decree or other order of a court of record.

**6.** Section 727 sets forth the grounds for objections to discharge.

**7.** *Sculler v. Rosen (In re Rosen),* 132 B.R. 679 (Bankr.E.D.N.Y.1991).

$40,000 for counsel fees and costs and to pay to Mrs. Sculler $12,000, to satisfy an outstanding arbitration award for legal fees she had incurred for services rendered by Blaustein & Wasserman, Esqs. earlier in her matrimonial action.

(2) The judgment of divorce order dated June 15, 1988, directed the Debtor to pay Mrs. Sculler's additional legal fees due the Nagel Firm through March 26, 1988. The order did not set forth the amount of the fees.

(3) The October 11, 1989 order amended the June 15, 1988 order to set forth the sum of $32,702 as the fees and disbursements awarded to The Nagel Firm.

(4) The order dated February 22, 1990 directed the Debtor to pay an additional $1,000 to the Nagel Firm for legal services.

(5) The orders dated July 25, 1990 and August 31, 1990, awarded Mrs. Sculler additional sums of $10,000 and $13,514.27 respectively for counsel fees and costs due the Nagel Firm.

The Plaintiffs allege that the legal fees awarded which total $109,216.27 as set forth above all related to the dissolution of the Rosen marriage and constitute nondischargeable support pursuant to § 523(a)(5).

The sixth claim for relief alleges that the Debtor failed to turnover one-half of $50,-000 in municipal bonds as he was required to do pursuant to the state court's equitable distribution direction.

The tenth claim for relief alleges that the Debtor failed to account for, and turnover to, Mrs. Sculler funds which were intended as presents to their daughter upon her Bat Mitzvah, as he was required to do pursuant to the state court's equitable distribution decision.

The twelfth claim for relief alleges, upon information and belief, that the Debtor reduced his interest in certain assets, including interest in his accounting firm, and thereby violated the terms of the judgment of divorce which enjoined him from transferring, mortgaging, hypothecating, or disposing of his interest in certain assets.

On June 17, 1992, pursuant to this court order of November 6, 1991, Plaintiffs filed an amended complaint, which Debtor's counsel asserted was technically defective and was consequently withdrawn by the Plaintiffs. On August 24, 1992, Plaintiffs filed a second amended complaint containing nine causes of action seeking a determination that the underlying obligations are nondischargeable pursuant to §§ 523(a)(4) or 523(a)(5). The first eight claims represented the first through sixth, tenth, and twelfth claims for relief as alleged in the original complaint. The ninth claim for relief alleged that the Debtor breached a fiduciary duty owed to Mrs. Sculler by virtue of the judgment of divorce by: (1) pledging as collateral for a loan the aforementioned municipal bonds of which he was required to turn over one-half of their value to Mrs. Sculler, but because of his default in satisfying the loan, the bonds were lost in the ensuing foreclosure, (2) the appropriation of the Bat Mitzvah funds for his own use, and (3) reducing his interest in certain assets including his accounting firm and a Vermont residence.

In response, the Debtor again moved pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012, to dismiss the amended complaint for failure to state a claim upon which relief can be granted. The Debtor, by his counsel, argued, for the first time, that Mrs. Sculler's new husband had made substantial payments to the Nagel Firm on her behalf, thereby creating an assignment of a debt which would be dischargeable pursuant to § 523(a)(5)(A). The exact amount paid by Mr. Sculler was not disclosed in the Plaintiffs' brief.

By order dated April 20, 1993, this Court denied the Debtor's motion to dismiss with respect to the first eight claims

of the second amended complaint but dismissed, with leave to amend, the Plaintiffs' ninth claim for breach of fiduciary duty for failure to state a claim upon which relief can be granted.[8]

On May 28, 1993, the Plaintiffs filed a third amended complaint which re-stated the first eight claims for relief and set forth the ninth claim dealing with the alleged breach of fiduciary acts by the Debtor with greater specificity. The Debtor's answer generally denied the allegations in the complaint and asserted three affirmative defenses: (1) that all or substantially all of the legal fees referenced in the complaint were paid to the Nagel Firm by Mrs. Sculler's second husband, Mr. Sculler, resulting in an assignment to Mr. Sculler, which pursuant to § 523(a)(5)(A), makes the claims dischargeable, (2) that the failure to turnover property as set forth on counts six, eight, and nine arose out of a dischargeable property settlement, and (3) that Mrs. Sculler lacks standing to pursue a claim for their daughter's Bat Mitzvah funds because she had attained the age of majority at the time of the entry of the order for relief in the Debtor's bankruptcy.

Thereafter, the Debtor filed two motions, one seeking an order of civil contempt pursuant to Federal Rule of Bankruptcy Procedure 9020(b) with respect to Mr. Sculler's alleged wilful failure to attend a deposition pursuant to a duly served subpoena and the second seeking discovery sanctions pursuant to Federal Rule of Bankruptcy Procedure 7037 for the Plaintiffs' alleged wilful failure to appear for duly noticed depositions. Both motions also sought monetary sanctions. In response to the motions for contempt and discovery sanctions, the Plaintiffs cross-moved for partial summary judgment, where they sought a declaration that the legal fees awarded as set forth above were nondischargeable, and such other relief as this Court deemed just and proper.

The Debtor opposed the Plaintiffs' motion for summary judgment procedurally on the grounds that it lacked the statement required pursuant to former Rule 22(b) of the Local Rules of the United States Bankruptcy Court for this District, that there is no genuine issue to be tried. The Debtor's Local Rule 22(b) statement opposed the Plaintiffs' motion substantively by setting forth disputed issues of material fact requiring trial. The Debtor contended the issues include: (1) whether the legal fees awarded were intended as support for Mrs. Sculler and/or any minor children or a property settlement, (2) whether or not Mrs. Sculler's attorneys have been paid and if so, by whom, and (3) whether or not Mrs. Sculler assigned by contract or operation of law her right to recover the said legal fees.

On July 12, 1994, this Court denied the Debtor's contempt motion and the Debtor's motion for discovery sanctions.[9] In addition, this Court denied the Plaintiffs' cross-motion for partial summary judgment and directed the parties to go forward with the trial of this adversary proceeding.

Thereafter the trial preceded before me during which time Mr. Sculler, Mrs. Sculler and Mr. Rosen testified.

### Discussion

#### A. Legal Fees Awarded in Divorce Action—11 U.S.C. § 523(a)(5)

The law dealing with the issue of the dischargeability of the legal fees in this case was reviewed at length in my last decision in this case. *In re Rosen,* 169 B.R. at 518–521. Neither side has offered any case law or authorities that would change my analysis of the law since that decision in 1994, nor has this Court's efforts uncovered any authorities that support a contrary opinion. Therefore, my analysis of the law on this issue is essen-

---

**8.** *Sculler v. Rosen (In re Rosen),* 151 B.R. 648 (Bankr.E.D.N.Y.1993).

**9.** *Sculler v. Rosen (In re Rosen),* 169 B.R. 512 (Bankr.E.D.N.Y.1994).

tially unchanged from that previous decision.

Section 523(a)(5) of the Bankruptcy Code excepts from discharge any debt:

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record ... but not to the extent that -
>
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise ...; or
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5). "The spouse seeking a determination that an obligation is nondischargeable on the grounds that it was actually in the nature of alimony, maintenance or support, has the burden of proof." *Mackey v. Kaufman (In re Kaufman)*, 115 B.R. 435, 439 (Bankr.E.D.N.Y. 1990). In this case, Mrs. Sculler and the Nagel Firm shoulder that burden.

The nature of the legal fees is the basis of the determination of whether or not they are dischargeable. If the obligation to pay legal fees is in the nature of alimony, maintenance or support, it is nondischargeable. *See Brody v. Brody (In re Brody)*, 3 F.3d 35, 38 (2nd Cir.1993); *Friedman v. Silberfein (In re Silberfein)*, 138 B.R. 778, 780 (Bankr.S.D.N.Y.1992); *Leslie v. Hart (In re Hart)*, 130 B.R. 817, 825 (Bankr.N.D.Ind.1991); *Zaera v. Raff (In re Raff)*, 93 B.R. 41, 44 (Bankr. S.D.N.Y.1988). However, in reality, such distinction is rarely clear. *See In re Silberfein*, 138 B.R. at 780; 4 *Collier on Bankruptcy*, ¶ 523.11[1] (Matthew Bender 15th Ed. Revised 1996) (hereinafter *"Collier"*) (support obligations and property settlements are somewhat interchangeable).

In determining the nature of the Debtor's obligation to pay the legal fees awarded in the matrimonial action, "a court must conclude whether payments constitute alimony, maintenance or support pursuant to the bankruptcy laws, rather than state laws." *In re Raff*, 93 B.R. at 45.

> The proper approach under federal bankruptcy law is to determine whether the debt for the ex-spouse's attorney's fees was intended, at the time of the decree, to be part of the division of property, or part of the ex-spouse's support and maintenance. This determination must be made in light of all the facts and circumstances relevant to the intent of the attorney's fee award.

*Henry v. Henry (In re Henry)*, 110 B.R. 608, 610 (Bankr.N.D.Ga.1990).

The dischargeability of attorney's fees was dealt with by the Second Circuit in the leading case *Pauley v. Spong (In re Spong)*, 661 F.2d 6 (2nd Cir.1981). The court made the initial determination that the bankruptcy court could have correctly found that the term of the stipulation that was entered into by both spouses which provided for the wife's attorneys' fees to be paid by the husband/debtor fell within the purview of the bankruptcy definition of alimony and support. *Id.* at 9. The court stated, "[a]n award of attorney's fees may be essential to a spouse's ability to sue or defend a matrimonial action and thus a necessary under the law." *Id.* The court then tackled the issue of whether the fact that the stipulation provided for the wife's attorneys' fees to be paid by the husband directly to the law firm constituted an assignment thereby making the fees nondischargeable pursuant to § 523(a)(5)(A). *Id.* at 9–10. The court found that the stipulation was actually a third party beneficiary contract rather than an assignment and therefore did not fall into the assignment exception. *Id.* at 10. It was the substance rather than the form of the payment that the court found conclusive. *Id.* at 11.

Since *Spong*, bankruptcy courts have generally analyzed this area of the law as follows:

> If a debtor is ordered to pay an ex-spouses' [sic] attorney[']s fees incident to a dissolution, and the fees awarded are based upon need, such fees are usually nondischargeable as being in the nature of support.
>
> Attorney fees are not always categorized as support if the award of fees merely balances a property division, and neither party requires the awarding of fees as additional support. In such a case the fees are likely to be dischargeable.

*In re Silberfein*, 138 B.R. at 781 (quoting *In re Hart*, 130 B.R. at 825).

■ Thus, it is abundantly clear that "[i]n determining whether or not an obligation is designed for the support of a former spouse, the court must look ... to the intent of the parties and to the substance of the obligation." *Freyer v. Freyer (In re Freyer)*, 71 B.R. 912, 916 (Bankr. S.D.N.Y.1987); *See In re Raff*, 93 B.R. at 45 (review judgment to construe intent). "If the intent is not explicitly expressed, the bankruptcy court must attempt to infer the intent by examining the underlying facts of the case." *Collier* ¶ 523.11[6].

Courts have considered a list of factors in determining the intent of a particular award in a divorce decree or separation agreement including an award of attorneys fees. The factors considered include:

> (1) whether the obligation terminates on the death or remarriage of either spouse; (2) the characterization of the payment in the decree and the context in which the disputed provisions appear; (3) whether the payments appear to balance disparte [sic] income; (4) whether the payments are to be made directly to the spouse or to a third party; (5) whether the obligation is payable in a lump sum or in installments over a period of time; (6) whether the parties intended to create an obligation of support; (7) whether an assumption of debt has the effect of providing the support necessary to insure that the daily needs of the former spouse and any children of the marriage are met; and (8) whether an assumption of the debt has the effect of providing the support necessary to insure a home for the spouse and minor children.

*In re Silberfein*, 138 B.R. at 780 (citations omitted); *In re Kaufman*, 115 B.R. at 440–41; *In re Freyer*, 71 B.R. at 918. The Second Circuit, while reviewing a bankruptcy court's decision that found a debt to be partially nondischargeable, noted that courts often look at a variety or list of factors but that "such a list is not necessarily exclusive. All evidence, direct or circumstantial, which tends to illuminate the parties' subjective intent is relevant." *In re Brody*, 3 F.3d at 38.

In my decision of July 12, 1994, I held that there existed genuine issues of material fact as to the nature of the Defendant's obligation to pay the legal fees awarded by the state court which could not be resolved by way of summary judgment. *In re Rosen*, 169 B.R. at 520. The state court orders awarding the legal fees did not specify whether those fees were in the nature of support or a part of the property distribution. In addition, there was also the factual question of whether or not the legal fees awarded were assigned by Mrs. Sculler to Mr. Sculler making those fees dischargeable by virtue of § 523(a)(5)(A). I therefore denied the summary judgment motion and directed the parties to continue with the trial phase of this adversary proceeding.

In order to determine whether the legal fees were in the nature of support or a part of the property settlement, bearing in mind the factors described above, the facts developed during the course of the trial must be analyzed and applied.

■ A bankruptcy court may choose not to abide by the characterization of the award or debt as conclusive evidence of the intent of the payment. *In re Brody*, 3 F.3d at 38. "The court must look to the

substance, and not merely the form, of the payments." *Id.* In this case, the characterization of the payment in the decree is especially unenlightening. The decree itself only states that the Debtor is to pay Mrs. Sculler her legal fees due the Nagel Firm through March 26, 1988, but does not list the amount. (Pls.' Ex. 3 at 5.) This provision is listed under the section entitled "Miscellaneous," not under the "Equitable Distribution" or the "Alimony and Child Support" sections. *Id.* The court did specifically decline to award alimony because of Mrs. Sculler's cohabitation at the time with her future husband Mr. Sculler. *Id.* at 4. However, this denial to award Mrs. Sculler alimony is not determinative because if other court ordered obligations imposed on Mr. Rosen meet the federal bankruptcy law definition of support, the court may find the debt to be nondischargeable. *See Collier,* ¶ 523.11[6][f]. Moreover, although the state court orders did not characterize the Debtor's obligation to pay Mrs. Sculler's legal fees as a part of any support or alimony award or as a part of the division of property, with respect to the dischargeability of an obligation, even if the state court orders did characterize the nature of the legal fees, a bankruptcy court is not bound by such labels. *In re Silberfein,* 138 B.R. at 780 (citing *In re Raff,* 93 B.R. at 45); *Collier,* ¶ 523.11[6][a]. As stated by the Second Circuit in *In re Brody,* "[a]lthough the status of a payment under state law is relevant to this determination, it is not dispositive." *Id.* at 39. The orders stating the exact amounts of legal fees that the Debtor was directed to pay do not state whether the fees were in the nature of support, or as part of the property settlement. It would appear to this court that because the divorce decree setting out the equitable distribution of property was filed on June 15, 1988, which was prior to all but one of the orders that directed the Debtor to pay the particular fees, that the fees would not have been included by the state court in its analysis in distributing the marital property.

The payments do appear to balance dissimilar incomes. The Debtor argues that Mr. Sculler, who was to become Mrs. Rosen's future husband, had sufficient funds to support Mrs. Sculler. However, at the time of the divorce, the Scullers were not married, and in fact Mrs. Sculler was unemployed and suffering from lymphoma. (Tr. Aug. 5, 1998 at 64.) Mr. Sculler, at that time, was under no obligation to support Mrs. Sculler. While the state court recognized that Mrs. Sculler would be getting some amount of support from Mr. Sculler, and thereby did not award her alimony, it is clear that she was taking responsibility for her own interests in the divorce proceeding as evidenced by the fact that she borrowed money from Mr. Sculler and paid him back. *Id.* at 84–85. Whether Mr. and Mrs. Sculler had or had not gotten married, Mrs. Sculler would have had this obligation to repay him the money that should have come from the Debtor.

A statement I made in one of my earlier decisions in this case is relevant at this point. There I held that "[i]n the event this Court finds that the attorneys' fees awarded to [the Nagel Firm] were indeed necessary to Janet Sculler's ability to defend or maintain her matrimonial action, and thereby alimony, the obligation will be found nondischargeable." *In re Rosen,* 151 B.R. at 654; *See In re Hart,* 130 B.R. at 849 (where debtor is ordered to pay spouse's attorneys' fees incident to a dissolution, and the fees awarded are based on need, such fees are usually nondischargeable as being in the nature of support); *Overton v. Horner (In re Horner),* 125 B.R. 458, 462–63 (Bankr.W.D.Pa.1991) (debtor's divorce decree obligation to pay former wife's attorney fees constituted nondischargeable support where attorney services were necessary for wife to pursue her support claims); *In re Auer,* 22 B.R. 274, 275 (Bankr.E.D.N.Y.1982) (award of attorneys fees was essential to a spouse's ability to sue or defend a matrimonial action, therefore, it was a "necessary" pay-

ment which constitutes alimony or support).

The assumption of debt, in this case the legal fees, had the effect of providing support to the non-debtor spouse in that at the time of the divorce and the orders that were entered, Mrs. Sculler was not working and suffered from lymphoma. (Tr. Aug. 5, 1998 at 64.) Mrs. Sculler testified that during the divorce proceedings, she could not afford to pay her legal fees in the action based on her situation. *Id.*

It is apparent that Mrs. Sculler had great difficulty funding her matrimonial action. Blaustein & Wasserman, Esqs., attorneys that represented Mrs. Sculler prior to the Nagel Firm, stopped representing her because she could not afford to pay for their services. (Tr. Aug. 5, 1998 at 67.) They subsequently obtained an arbitration judgment of $12,000 against Mrs. Sculler for their services. *Id.* The state court ordered Mr. Rosen to pay the $12,-000 due Blaustein & Wasserman, Esqs., but he failed to make the payment. *Id.* at 68. Because they were not paid, Blaustein & Wasserman, Esqs., had a lien placed on Mrs. Sculler's house. *Id.* at 69. Mr. Sculler ultimately paid Blaustein & Wasserman, Esqs., the $12,000 so that the lien could be removed and Mrs. Sculler would be able to sell the house so that she could repay Mr. Sculler for the loans she had taken from him to pay her legal fees. *Id.*

At one point in the divorce proceedings, even the Nagel Firm threatened to stop representing Mrs. Sculler so Mr. Sculler loaned her the money to make payments to that firm as well. (Tr. Jan. 21, 1998 at 35.)

In addition, Mr. Rosen was ordered to pay Mr. Chalfin, the accountant appointed by the matrimonial court. (Pls.' Ex. 2 at 2.) When Mr. Rosen failed to pay him, Mr. Chalfin placed a lien on Mrs. Sculler's house. (Tr. Jan. 21, 1998 at 40; Aug. 5, 1998 at 82.) In order to have the lien removed so that Mrs. Sculler could sell the house, again Mr. Sculler loaned her the money to pay Mr. Chalfin. *Id.*

Mrs. Sculler testified that she had to borrow money from Mr. Sculler at the time because "[t]o continue the divorce action I had to have some money to pay an attorney." (Tr. Aug. 5, 1998 at 66.) This Court finds that Mrs. Sculler was not able to support herself sufficiently to pay her own attorneys' fees and therefore the state court's orders provided for the payment of the fees. Without the payment of such fees, she would not have been able to continue to have adequate representation in the divorce proceedings.

Credibility is the fulcrum in the determination of this issue. This Court is persuaded by the testimony of both Mr. Sculler and Mrs. Sculler. I find that the awards of legal fees were clearly necessary for Mrs. Sculler to defend and maintain her matrimonial action. I find these fee awards were in the nature of support and maintenance and therefore are nondischargeable pursuant to § 523(a)(5).

B. *Assignment of Legal Fees Awarded in Divorce Action—11 U.S.C. § 523(a)(5)(A)*

■ In the Debtor's Answer to the Third Amended Complaint, the Debtor argues that if the court does decide the debts related to the fee awards are nondischargeable pursuant to § 523(a)(5), the payments made by Mr. Sculler to fulfill some of those debts resulted in an assignment by operation of law and therefore are dischargeable under the exception § 523(a)(5)(A). Section 523(a)(5)(A) states:

**§ 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination

made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that -

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise....

11 U.S.C. § 523(a)(5)(A).

The Debtor supports the argument in his Post–Trial Memorandum of Law by quoting sections of testimony given by Mr. Sculler regarding the debts he paid on behalf of Mrs. Sculler. The Debtor also cites three cases dealing with assignment of debts. *See Smith v. Child Support Enforcement (In re Smith)*, 180 B.R. 648 (D.Utah 1995); *In re Mozingo*, 153 B.R. 276 (Bankr.W.D.Mo.1993); *Reichurdt v. Cerbello (In re Reichurdt)*, 27 B.R. 751 (Bankr.W.D.Wash.1983). The Plaintiffs' answer this argument by stating these payments were loans between Mr. and Mrs. Sculler and that no evidence given demonstrates an assignment.

American Jurisprudence, Second Edition, defines a legal assignment as:

[A] transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one's whole interest in an estate, or chattel, or other thing. It is the act by which one person transfers to another, or causes to vest in another, his right of property or interest therein. But to effect a legal assignment, *there must be evidence of intent to assign or transfer the whole or part of a specific thing, debt, or chose in action,* and the subject matter should be sufficiently described to make it capable of being identified.

6 Am.Jur.2d, Assignments § 1, (emphasis added).

In order to prove there was an assignment in this case, the Debtor would need to offer evidence that when Mrs. Sculler accepted the loan she made some representation that she was then assigning to Mr. Sculler whatever claim or claims she had against Mr. Rosen. However, if the evidence only demonstrates the transaction between Mr. and Mrs. Sculler was a loan with no intent on Mrs. Sculler's behalf to actually transfer her right to claims against Mr. Rosen, then there is no assignment.

In examining the record, Mr. Sculler testified that the understanding between himself and Mrs. Sculler was that his paying debts on her behalf was a loan and that she would repay him. (Tr. Jan. 21, 1998 at 31.) In addition, Mrs. Sculler testified that the money paid by Mr. Sculler was a loan and that it had been clear between them that it was a loan. (Tr. Aug. 5, 1998 at 84.) The Debtor highlights testimony by Mr. Sculler that when Mrs. Sculler received proceeds that she was awarded in the matrimonial action, they would have been used to repay Mr. Sculler. (Tr. Jan. 21, 1998 at 43, 48, 61.) But that testimony only proves that any proceeds Mrs. Sculler received would be one way for her to repay the loan. What eventually happened according to the testimony of both Mr. and Mrs. Sculler was that Mrs. Sculler sold her house in East Brunswick and used the funds from the sale to repay Mr. Sculler. (Tr. Jan. 21, 1998 at 42; Tr. Aug. 5, 1998 at 105.) There were no written agreements between Mr. and Mrs. Sculler regarding the loan, or from what funds Mr. Sculler would be repaid. (Tr. Jan. 21, 1998 at 70; Tr. Aug. 5, 1998 at 59, 84.) It is clear that Mrs. Sculler intended to repay Mr. Sculler from whatever money she may have gotten from whatever source, without it being limited in any way to the proceeds from actions against Mr. Rosen. (Tr. Jan. 21, 1998 at 48, 50, 56; Tr. Aug. 5, 1998 at 47, 61.) Lastly, any actions brought against Mr. Rosen have been brought in the name of Mrs. Sculler. (Tr. Aug. 5, 1998 at 62.) Mr. Sculler has never taken any action to collect on Mrs. Sculler's judgment. *Id.* This testimony taken as a whole in no way indicates that there was any intent on Mrs. Sculler's part to assign

her right to claims against Mr. Rosen to Mr. Sculler.

Debtor argues vehemently that the fact that Mrs. Sculler repaid Mr. Sculler from funds other than any received from Mr. Rosen would not cure the taint of the alleged assignment. Unfortunately, this argument is premature because the Debtor never proved that this was an assignment in the first place.

The three cases cited by the Debtor, to wit, *In re Smith, In re Mozingo,* and *In re Reichurdt,* which all deal with situations where the non-debtor spouse undertook steps to evidence an assignment by way of a written contract are inapposite. The issue in those cases was whether the assignments were cured by acts or conduct of the non-debtor spouse. They do not assist in any way in finding that Mrs. Sculler assigned her claims to Mr. Sculler.

The testimony and evidence provided to this court does not demonstrate that there was anything but a simple loan between Mr. and Mrs. Sculler and that the loan was repaid. Therefore, the fees owed by Mr. Rosen to Mrs. Sculler and the Nagel Firm pursuant to the state court orders were not made dischargeable by an assignment and therefore are nondischargeable.

### C. Bat Mitzvah Monies—11 U.S.C. § 523(a)(4)

The Final Judgment of Divorce states, "Defendant [Mr. Rosen] and the Plaintiff [Mrs. Sculler] shall provide an accounting of all monies removed by him from Sandra's Bat Mitzvah funds. They shall immediately reconstitute and return the fund and the entire amount of the Bat Mitzvah monies shall be turned over to plaintiff [Mrs. Sculler] within 90 days." (Pls.' Ex. 3 at 5.) This clause appears under the sec-

tion entitled "Miscellaneous." Plaintiffs allege that this obligation falls within the exception to discharge § 523(a)(4) and is therefore nondischargeable.[10] Section 523(a)(4) states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

11 U.S.C. § 523(a)(4). The statute restricts an allegation of fraud or defalcation to a situation where there is a fiduciary relationship. However, there is no such restriction for allegations of embezzlement or larceny. In the instant case, Plaintiffs do not make any accusations of embezzlement or larceny. Plaintiffs' argue that Mr. Rosen had a fiduciary duty to account for and turn over the Bat Mitzvah funds to Mrs. Sculler and by failing to do so violated that fiduciary duty. Debtor answers by stating there was no fiduciary duty running between Mr. Rosen and Mrs. Sculler and that Mrs. Sculler has no standing to assert a claim for the funds as the funds belonged to the daughter who had reached the age of majority at the time this complaint was filed.

 There is a two step process in determining whether a debt falls within the § 523(a)(4) exception to discharge where fraud or defalcation are alleged. *In re Chavez,* 140 B.R. 413, 422 (Bankr. W.D.Tex.1992). The first step is to determine whether a fiduciary relationship existed prior to the transaction which produced the debt. *Id.; See Gore v. Kressner (In re Kressner),* 155 B.R. 68, 73 (Bankr. S.D.N.Y.1993) ("it must be initially estab-

---

**10.** The Court notes that the Plaintiffs' Third Amended Complaint cited § 523(a)(5) which refers to debts excepted from discharge, in pertinent part, to a spouse, or former spouse, for alimony or maintenance in connection with a divorce decree or other order of a court of record as a basis for the denial of dischargeability of the Bat Mitzvah funds.

However, the Plaintiffs' did not argue this basis in court nor was it discussed in either parties' post-trial memoranda of law. Having been presented with argument only as to the § 523(a)(4) count regarding the Bat Mitzvah funds, the Court will consider this to be the sole statutory basis for Plaintiffs' action regarding the dischargeability of such funds.

lished that the debtor acted in a fiduciary capacity"); *Farina v. Balzano (In re Balzano)*, 127 B.R. 524, 532 (Bankr.E.D.N.Y. 1991) (determining if fiduciary relationship existed is a threshold question). If no fiduciary relationship existed, then analysis ends there with the conclusion that the debt does not fall within the § 523(a)(4) exception. If a fiduciary relationship did exist, the second step is to examine if fraud or defalcation occurred during that relationship. *In re Chavez*, 140 B.R. at 422.

The burden of proof is on the Plaintiffs as they are the parties seeking to establish the non-dischargeability of this debt. *Teichman v. Teichman (In re Teichman)*, 774 F.2d 1395, 1398 (9th Cir. 1985); *In re Balzano*, 127 B.R. at 529. In the Plaintiffs' Post–Trial Memorandum of Law, the Plaintiffs make the conclusory statement, "the debtor clearly held these funds in a fiduciary capacity," but offer no legal or factual support for this. (Pls.' Post-trial Mem. Law at 4.) Plaintiffs' counsel provides no case law that ex-spouses have a fiduciary relationship in conjunction with the property awarded to one another in a divorce decree. In fact, courts have held that there is no fiduciary relationship necessarily found between two divorcing spouses. *See In re Teichman*, 774 F.2d at 1400 ("as a general rule the exception to discharge in 11 U.S.C. § 523(a)(4) should not apply in connection with a property settlement and a divorce decree"). The popular definition of a fiduciary being one who has the trust and confidence of another is not what is used by courts as being in a fiduciary capacity under § 523(a)(4). *In re Balzano*, 127 B.R. at 532. Instead, an actual express or technical trust is necessary for a court to find the requisite fidu-

ciary relationship. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Teichman*, 774 F.2d at 1398; *Barristers Abstract Corp. v. Caulfield (In re Caulfield)*, 192 B.R. 808, 818 (Bankr.E.D.N.Y.1996); *In re Balzano*, 127 B.R. at 532. Plaintiffs have failed to demonstrate any such express or technical trust exists which would have given rise to a fiduciary relationship between Mrs. Sculler and Mr. Rosen. Therefore this Court must find that the Bat Mitzvah funds do not fall within the exception to discharge of § 523(a)(4) and are deemed dischargeable.

### D. Turnover of Bonds—11 U.S.C. § 523(a)(4)

Plaintiffs argue that § 523(a)(4) which refers to debts excepted from discharge for fraud or defalcation while acting in a fiduciary capacity also applies to the provision in the divorce decree directing Mr. Rosen to give Mrs. Sculler one-half of the municipal bonds.[11] The Final Judgment of Divorce states in pertinent part, "[t]he municipal bonds in the amount of $50,000.00 shall be equally divided. Defendant [Mr. Rosen] shall immediately turn over to plaintiff [Mrs. Sculler] one-half of these bonds." (Pls.' Ex. 3 at 3.) This clause appears in the section entitled "Equitable Distribution." Plaintiffs allege that the state court deemed Mr. Rosen to be holding the bonds in trust for Mrs. Sculler and he was therefore acting in a fiduciary capacity. However, the clause in the decree makes no such assertion that a trust exists. The clause appears to be distributing property between two divorcing people. In such a situation, one per-

11. The Court notes that the Plaintiffs' Third Amended Complaint cited § 523(a)(5) which refers to debts excepted from discharge, in pertinent part, to a spouse, or former spouse, for alimony or maintenance in connection with a divorce decree or other order of a court of record as a basis for denial of dischargeability of the turnover of municipal bonds. However, the Plaintiffs did not argue this basis in court nor was it discussed in either parties' post-trial memoranda of law. Having been presented with argument only as to the § 523(a)(4) count regarding the turnover of the municipal bonds, the Court will consider this to be the sole statutory basis for Plaintiffs' action regarding the dischargeability of the turnover of the municipal bonds. See footnote 4 for the provisions of § 523(a)(4).

son must necessarily be in control of some property that must be given to the other when dividing up their assets. Here, it is Mr. Rosen who had control of the bonds, and as part of the court directed equitable distribution, he was ordered to give half of it to his ex-spouse. Plaintiffs offer no case law or evidence which would demonstrate how this results in a trust such as is required to find a debt to be nondischargeable under § 523(a)(4). This Court is of the opinion that the facts of this case do not justify the finding that a trust was created for the same reasons as were discussed earlier in this opinion in relation to the Bat Mitzvah funds. Therefore, this court finds the debt arising from the divorce decree directing Mr. Rosen to turn over to Mrs. Sculler one-half of municipal bonds is deemed dischargeable.

*E. Interest Due on Nondischargeable Debts*

■ Plaintiffs have asked for an award of prejudgment interest on sums found to be nondischargeable by this Court. Prejudgment interest refers to interest that accrued prior to this Court's judgment finding of nondischargeability. Since this Court has found the legal fees awarded in the state court orders to be nondischargeable pursuant to § 523(a)(5) as being in the nature of support, I will consider this request pertaining to this debt.

■ Courts will award prejudgment interest in situations where a federal law has been violated. *Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.,* 874 F.2d 431, 436 (7th Cir.1989). In *Gorenstein,* the Seventh Circuit generalized abundant case law to state the axiom "that prejudgment interest should be presumptively available to victims of federal law violations." *Id.; See Shaver Motors, Inc. v. Mills (In re Mills),* 111 B.R. 186, 208 (Bankr.N.D.Ind. 1988)("If the issues to be resolved are a federal matter ..., federal law shall apply as to prejudgment interest"). In a concurring opinion, the Court cautioned that "prejudgment interest might be inappro-

priate at some times." *Gorenstein,* 874 F.2d at 439 (Ripple, J., concurring)(citing *General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 656–57, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983)). The Court explains that an award of prejudgment interest may be inappropriate when a plaintiff substantially delays in filing suit because the "delay shifts the investment risk to the defendant, allowing the plaintiff to recover interest without bearing the corresponding risk." *Id.* (quoting *Williamson v. Handy Button Mach. Co.,* 817 F.2d 1290, 1298 (7th Cir.1987)).

Courts have found that a nondischargeability action pursuant to 11 U.S.C. § 523(a) arises from federal law, specifically the federal Bankruptcy Code, and therefore a court may make an award of prejudgment interest on amounts found to be nondischargeable. *See Payne v. Brace (In re Brace),* 131 B.R. 612, 614 (Bankr. W.D.Mich.1991); *Daly v. Auricchio (In re Auricchio),* 196 B.R. 279, 289 (Bankr. D.N.J.1996). Since the adversary proceeding presently before this court has established that a debt is nondischargeable pursuant to § 523(a)(5), it clearly arises under federal law.

One of the major policies that courts use to justify the awarding of prejudgment interest is that it "is necessary to carry out federal policies of compensation and deterrence." *Gorenstein,* 874 F.2d at 439 (Ripple, J., concurring)(quoting *Williamson,* 817 F.2d at 1297); *See also SEC v. Hasho,* 784 F.Supp. 1059, 1112 (S.D.N.Y.1992)("An award of prejudgment interest is intended to compensate an aggrieved party for the wrongful deprivation of its money."); *cf. In re Brace,* 131 B.R. at 613 (court awarding prejudgment interest is intended to compensate "the Plaintiffs for the lost use of their money spent in repairing concealed defects in their house"). The *Gorenstein* court justified the necessity of this rule by stating that without such a rule, "compensation of the plaintiff is incomplete and defendant has an incentive to delay." 874 F.2d at 436; *See Residential Mktg.*

*Group v. Granite Inv. Group,* 933 F.2d 546, 549 (7th Cir.1991)("Prejudgment interest is necessary to compensate the victim of a breach of contract or other wrong"). In the case presently before this Court, Mrs. Rosen was first awarded attorneys' fees in 1987 and has been without the use of that money for over 11 years. She should be compensated for the loss of that money for that time period.

Another similar policy that is used by many courts when confronted with the issue of awarding prejudgment interest is fairness and balancing of equities. *Gorenstein,* 874 F.2d at 439 (Ripple, J., concurring)(citing *Myron v. Chicoine,* 678 F.2d 727, 734 (7th Cir.1982)); *Dery v. U.S. (In re Bridge),* 106 B.R. 474, 476 (Bankr.E.D.Mich.1989)(basing discretion on traditional equitable principles). It would certainly be equitable to compensate Mrs. Sculler for the time it has taken her to recover what she was rightly awarded.

There is a common understanding and practice in many courts that it is left to the discretion of the court to award prejudgment interest. *See Gorenstein,* 874 F.2d at 439 (Ripple, J., concurring); *Shearson Lehman Hutton, Inc. v. Schulman (In re Schulman),* 196 B.R. 688, 699 (Bankr. S.D.N.Y.1996); *In re Bridge,* 106 B.R. at 477; *See also Hasho,* 784 F.Supp. at 1112 ("Prejudgment interest on damages pursuant to a violation of the federal securities laws is a matter of judicial discretion."); *In re Brace,* 131 B.R. at 614 ("in the absence of a statutory provision to the contrary, the award of prejudgment interest is a matter addressed to the discretion of the court" (quoting *EEOC v. Wooster Brush Co. Employees Relief Assoc.,* 727 F.2d 566, 578 (6th Cir.1984))).

Once it has been determined that prejudgment interest should be awarded, the next issue is whether the interest rate should be determined by federal or state law. As cited previously, the *Mills* court held that federal law shall apply as to the prejudgment interest rate when resolving federal matters. 111 B.R. at 208. The

*Mills* court further concluded that when liability arises under the United States Bankruptcy Code, it is federal law that governs the interest rate. *Id.* The determination of the dischargeability of a debt under § 523(a) is purely a matter of a federal law. *In re Brace,* 131 B.R. at 614; *See In re Auricchio,* 196 B.R. at 289. The interest rate in this proceeding clearly should be governed by federal law.

The case authority when determining the federal prejudgment interest rate in actions under § 523(a), rely upon 28 U.S.C. § 1961 to set the rate and accrual period. *In re Brace,* 131 B.R. at 614; *See In re Auricchio,* 196 B.R. at 289; *Brantley v. Weeks (In re Brantley),* 116 B.R. 443, 448 (Bankr.D.Md.1990)(court used 28 U.S.C. § 1961 to determine prejudgment interest rate on recoveries under the Bankruptcy Code); *Sims Office Supply, Inc. v. Ka–D–Ka, Inc. (In re Sims Office Supply, Inc.),* 94 B.R. 744, 748 (Bankr. M.D.Fla.1988). These cases all applied the rate prescribed by 28 U.S.C. § 1961 as a prejudgment interest rate even though this section only governs the rate and accrual of postjudgment interest because there is no federal statutory rate for prejudgment interest. In *Mills,* the court stated that the determination of the prejudgment interest rate is left to the Court's discretion, but defers to the decisions of other federal non-bankruptcy courts and adopts 28 U.S.C. § 1961 to determine the prejudgment interest rate, "unless there is substantial evidence showing that equities of the particular case require a different rate." 111 B.R. at 208 (quoting *Crampton v. Dominion Bank of Bristol, N.A. (In re H.P. King Co. Inc.),* 64 B.R. 487, 491 (Bankr.E.D.N.C.1986)).

According to 28 U.S.C. § 1961,

[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auc-

tion of fifty-two week United States Treasury bills settled immediately before the date of judgment.

28 U.S.C. § 1961. The present case is not an unusual situation that would require deviating from the accepted way courts have awarded prejudgment interest in similar situations which is to use the same interest rate as the postjudgment rate of interest. Currently, the federal postjudgment rate of interest is 4.918%. Additionally, courts have generally held that prejudgment interest begins to accrue from the date a demand is first made for the money or property in question, or from the filing of a state court action. *See In re Brace,* 131 B.R. at 613 ("The appropriate starting point for the accrual of prejudgment interest, absent any other indication, is the filing of the state court action"); *In re Schulman,* 196 B.R. at 699 (prejudgment interest began to accrue as of "the issuance of the arbitrators' award"). However, in the present case, this Court believes it is appropriate for the prejudgment interest to begin to accrue from the date the Plaintiffs were first entitled to receive the particular sums of money by orders of the state court. Therefore, Plaintiffs are awarded prejudgment interest on the nondischargeable fees determined at the federal rate of 4.918% calculated on each of the amounts awarded from the dates the state court orders were entered for the particular amounts, as shown in Table 1, to November 9, 1998, which the court believes is an appropriate cut-off date for the accrual of interest.[12]

Table 1

| Judgment Dated | Amount Awarded |
| --- | --- |
| November 4, 1987 | $52,000.00 |
| October 11, 1989 | $32,702.00 |
| February 22, 1990 | $ 1,000.00 |
| July 25, 1990 | $10,000.00 |
| August 31, 1990 | $13,514.27 |

*The Findings of Fact*

The foregoing opinion constitutes this Court's findings of fact pursuant to Federal Rule of Bankruptcy Procedure 7052.

*Conclusions of Law*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

For the reasons stated above, I conclude as follows: (1) a total of $109,216.27 in legal fees owed to both Mrs. Sculler and the Nagel Firm are deemed nondischargeable pursuant to § 523(a)(5), (2) the claim for the Bat Mitzvah funds is dischargeable, (3) the claim for the turnover of bonds is also dischargeable, and (4) the Plaintiffs are awarded prejudgment interest on the nondischargeable fees determined at the rate of 4.918% calculated on each of the amounts awarded from the date the state court order was entered for the particular amount as set forth in the table above to November 9, 1998.

The attorneys for the Plaintiffs are directed to settle an order in conformity with this opinion and such order should also set forth the total amount of interest due based upon the dates and amounts of each judgment as reflected in the foregoing Table 1.

12. As was noted earlier, prejudgment interest is in the discretion of the court. This Court feels that in this proceeding the prejudgment interest accrued until the date by which both parties had submitted their post-trial memoranda of law to this Court, which was November 9, 1998, because it would be inequitable to hold the Defendant accountable for the time it took for this ·Court to issue its' decision.